No. 13,738.

THE CITY OF MADISON v. ABBOTT.

FERRIES.—*License.*—*Interstate Waters.*—A State may, either directly or through a grant of power delegated to a municipal corporation, exact reasonable license fees from the keepers of ferries living within the State, although their boats ply between landings lying in two different States.

SAME.—*Municipal Regulation.*—The common council of a city may prescribe reasonable regulations for the government of interstate ferries, and may designate the time and place of landing, consistently with the general law and with such regulations as the board of county commissioners is authorized to make.

SAME.—*Time of Running.*—*Exclusive Control of County Commissioners.*—*City Ordinance.*—The board of commissioners of the proper county is exclusively authorized by statute to regulate the hours during which a licensed ferryman, whose boat runs to and from points without the limits of the State, is required to keep his ferry open and run his boats, and a city ordinance prescribing inconsistent regulations is not enforceable.

From the Jefferson Circuit Court.

*M. D. Wilson* and *C. E. Walker*, for appellant.

*E. G. Leland* and *S. E. Leland*, for appellee.

MITCHELL, J.—An ordinance adopted by the common council of the city of Madison in August, 1873, made it unlawful for any person to establish, set up or keep a ferry, or to use any boat or craft of any description for the purpose of carrying persons or property across the Ohio river, without having first obtained a license for that purpose from the common council. The ordinance required a license fee of twenty-five dollars to be paid into the city treasury, and prescribed the amount which might be demanded and received by ferrymen for transporting persons and property across the river. Among many other regulations the ordinance required the keeper of the ferry to land his boat at

the landing place once in every forty minutes, and that he should not remain at the landing more than fifteen minutes, upon pain of a forfeiture or fine of not exceeding twenty-five dollars for each offence.

The complaint upon which this action rests charges that the defendant, Abbott, having been duly licensed by the common council to maintain and operate a steam ferry from the city of Madison, in the State of Indiana, across the Ohio river to the opposite side, violated section 3 of the above mentioned ordinance, on a day named, by keeping his ferry-boat longer than fifteen minutes at such landing place.

The circuit court dismissed the complaint, and the city prosecutes an appeal to this court and asks that the judgment be reversed.

An act which went into force March 14th, 1867, conferred general power upon the common council of any city to establish and regulate ferries across any stream or river passing through or bordering upon the corporate limits of the city, to exact reasonable license fees from the keepers of ferries, to designate the kind of boats to be used, and the times and places of landing, and to prescribe the rate of ferriage to be charged. Section 3103, R. S. 1881. It was subsequently enacted that no person should be permitted to maintain a public ferry across any stream bordering the State, running to and from points without the limits of the State, without first having obtained a license from the board of commissioners of the proper county for that purpose. By this later act the ferry-keeper is required to enter into a recognizance to the State of Indiana, conditioned, among other things, to supply the ferry with boats and appliances, and a sufficient number of hands to manage the boats during the several hours in each day, and at such rates of ferriage, as the board granting the license shall from time to time order and determine. The act confers power on the board to require more than one boat to be kept, and that the ferry shall be kept open until midnight, and to fix the rate of

ferriage, and it declares all laws and parts of laws in conflict therewith repealed.

It is settled that a State may either directly, or through a grant of power delegated to a municipal corporation, exact reasonable license fees from the keepers of ferries living within the State, although their boats ply between landings lying in two different States, this being but the ordinary exercise of the police powers vested in the State, or delegated by it to the municipal corporation. *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365 ; *Fanning* v. *Gregoire*, 16 How. 524 ; *Conway* v. *Taylor*, 1 Black, 603 ; 7 Am. & Eng. Ency. of Law, p. 952.

The States have authorized and regulated ferries from the earliest history of the government, not only over waters entirely within their limits, but over rivers separating one State from another, it being conceded that interstate ferries could be managed and regulated more advantageously by the State, through its instrumentalities, than by the general government. The privilege of keeping a ferry, with the right to take toll for passengers and freight, is, therefore, a franchise granted by the State, to be exercised within such limits and under such regulations as may be required for the safety, comfort and convenience of the public. *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196.

In the exercise of this power the State may employ such instrumentalities as it may select, subject only to the constitutional inhibition against the imposition of taxes or burdens upon interstate commerce, and of the further duty of not permitting conflicting or inconsistent regulations which would tend to impede interstate communication.

The case before us involves no question concerning the power of the city to exact a license fee from ferry-keepers residing within the State, and we are, therefore, not called upon to consider that feature of the ordinance. *Duckwall* v. *City of New Albany*, 25 Ind. 283 ; *Shallcross* v. *City of Jefferson-*

The City of Madison v. Abbott.

ville, 26 Ind. 193; *Lutz* v. *City of Crawfordsville*, 109 Ind. 466; *City of Frankfort* v. *Aughe*, 114 Ind. 77.

The present case brings in question only that section of the ordinance which requires of the ferry-keeper that a ferry-boat shall land at the landing place once every forty minutes, and that it should not remain at the landing place longer than fifteen minutes at a time. The section in question seems to imply that every forty minutes, by night as well as by day, on Sunday and on secular days, a boat must be landed at the landing place; and that at no time can it remain there to exceed fifteen minutes.

The board of commissioners of the proper county is expressly authorized to regulate the hours during which a licensed ferryman, whose boats run to and from points without the limits of the State, is required to keep his ferry open and run his boats.

This is one of the subjects covered by the condition in the bond which the board is required to take before granting the license. It can not be supposed that it was intended that both the common council of the city and the board of commissioners should adopt regulations which might be conflicting and inconsistent upon the same subject. Without doubt the common council of a city may prescribe reasonable regulations for the government of interstate ferries, and may designate the time and place of landing, conformably to the general law and such regulations as the county commissioners are required to make. It may provide wharfage and landing places, and other facilities for ferry-boats and passengers, and make all such rules and regulations respecting the use of the same as may tend to prevent confusion and collision, and to secure the health, safety and comfort of the public. It may also prescribe penalties for any violation of its reasonable regulations, and it may impose a tax in some form, either as a license or otherwise, upon the instrumentalities within its jurisdiction, which are employed by the ferryman, sufficient to meet the expense of enforcing the execution of

its regulations. *Gloucester Ferry Co.* v. *Pennsylvania, supra; Transportation Co.* v. *Parkersburg,* 107 U. S. 691.

In respect to such regulations, however, as are expressly committed to the boards of commissioners, in order that consistency may be maintained, it must be deemed that the power of the board is exclusive. As we have seen, the hours in each day during which ferry-boats shall be run on interstate waters, and the rates of ferriage, are subject to the control of the boards of commissioners, and are specially covered by the ferryman's bond. If these subjects were also within the control of another independent body, confusion and conflict would be inevitable.

The offence complained of in the present case was committed on Sunday. We may reasonably infer that the regulations or requirements of the board of commissioners did not compel the defendant to land his boat every forty minutes, and not remain longer than fifteen minutes at the landing, on Sunday, unless some necessity for so doing was shown.

The judgment is affirmed, with costs.

Filed April 19, 1889.