## BLUE *v.* BEACH ET AL.

[No. 18,004. Filed Feb. 1, 1900. Rehearing denied June 20, 1900.]

HEALTH.—*State Board of Health.—Power to adopt Rules of Health. —Police Power.—Constitutional Law.*—Section 6711 *et seq.* Burns 1894 authorizing and empowering the State board of health to adopt rules and by-laws to prevent the spread of contagious and infectious diseases is not a delegation of legislative authority in violation of article 4, §1 of the Constitution vesting the legislative authority of the State in the General Assembly. *pp. 127-134.*

SAME.—*Boards of Health.—Schools.—Vaccination of School Children.* —Under the provision of §6718 Burns 1894 making it the duty of local boards of health to protect the public health and arrest the spread of contagious diseases, a local board of health may require that school children be vaccinated as a sanitary condition imposed upon their privilege of attending school during a period of threatened epidemic of smallpox. *pp. 127-142.*

From the Vigo Circuit Court. *Affirmed.*

*S. C. Stimson, H. A. Condit, R. B. Stimson* and *A. M. Higgins,* for appellant.

*W. L. Taylor,* Attorney-General, *W. A. Ketcham* and *Merrill Moores,* for appellees.

JORDAN, J.—Appellant, Frank D. Blue, instituted this action to enjoin the appellees, Fannie M. Beach and Orville E. Connor, the former being a teacher and the latter superintendent of a graded public school in the city of Terre Haute, from excluding his son, Kleo Blue, from attending said school.

The complaint, *inter alia,* discloses that appellant, plaintiff below, is a resident taxpayer of the city of Terre Haute, Vigo county, Indiana, and is the father of said Kleo Blue, and that the latter is a well and healthy child, between the ages of six and twenty-one years, unmarried, residing with his father in the school district wherein the school of which appellees are in charge is situated. The complaint further charges that the defendants have excluded said Kleo from

the said public school, and are threatening to prevent his further attendance as a pupil therein.

Appellees filed an answer in three paragraphs, the first being a general denial, which subsequently was withdrawn. By the second paragraph they sought to justify the act of which appellant complained, upon the facts therein alleged and set forth, that there was an exposure to and danger of an epidemic of the disease of smallpox within the limits of the city of Terre Haute and that the board of health of the State of Indiana had, in 1891, in pursuance to law, made, adopted, and published a certain rule or by-law, numbered eleven, and, further, that the legally organized and constituted board of health of said city had made and adopted a certain order. The latter, together with the above mentioned rule of the State board of health, is incorporated in and made a part of the answer.

It is then further alleged that, in pursuance to and in accordance with said order of the local board of health, the secretary thereof had notified and directed the board of school trustees of said city, together with the superintendent of its public schools, not to allow or permit any person whatever to attend such schools unless he or she had been vaccinated. In pursuance of said order of the board of health and the notice given by said health officer, said superintendent of schools directed appellees not to allow or permit any person whatever to attend the public school mentioned in the complaint unless such person had been vaccinated. In pursuance of such order and directions, appellees notified appellant, and also notified his son, Kleo Blue, that, unless the latter was vaccinated, he would not be permitted to attend said school as a pupil. Appellant failed and refused to have his son vaccinated, and the son also refused to be vaccinated; and, by reason of the order and directions aforesaid, it is alleged that appellees refused to permit him to attend said school.

The third paragraph of the answer is substantially the

Blue *v.* Beach.

same as the second except that it sets out and incorporates therein an ordinance of the city of Terre Haute, adopted in 1881, whereby the board of health of said city was created, and invested with certain specified powers. Rule eleven of the State board of health, in force at and prior to the time of the order made by the local health board, and made a part of the answer, is as follows: "In all cases where an exposure to smallpox is threatened, it shall be the duty of the board of health, within whose jurisdiction such exposure shall have occurred, or danger of such an epidemic ensuing, to compel a vaccination or revaccination of all exposed persons. All vaccinations must be made with non-humanized virus. The only exception to this rule that is recognized by this board is in the event that smallpox is prevalent in epidemic form, and the health officer should certify to the impossibility of obtaining such virus in sufficient quantity, and also as to the purity of the humanized virus to be used in lieu of the bovine virus."

The order made by the local board of health, and made a part of the answer, is as follows: "Whereas, there has been and is an exposure to and a danger of an epidemic of smallpox within the city limits of the city of Terre Haute, Indiana; and "whereas, vaccination is the only preventive of of the disease of smallpox, and the only preventive of the same becoming an epidemic; and whereas, it is dangerous to allow and permit persons to attend the public schools within the limits of said city without being vaccinated; therefore, be it adjudged, decreed and ordered, that there has been and is an exposure to and danger of an epidemic of smallpox within the limits of said city of Terre Haute, and that it is dangerous and would cause an exposure to and an epidemic of smallpox in said city to allow and permit persons to attend public schools within said city without being vaccinated, therefore no persons shall be allowed or permitted to attend any public school within the limits of said

city without first being vaccinated according to law; and be it further ordered, that the secretary of this board notify the board of school trustees and the superintendent of the public schools of this order and judgment."

The ordinance, pertaining to the board of health, adopted by the common council of the city of Terre Haute in December, 1881, which, as previously stated, was made a part of the third paragraph of the answer, among other things, provides as follows: "The board of health, hereby established, shall have general supervision of the sanitary condition of the city, and is hereby invested with power to establish and enforce such rules and regulations as they may deem necessary to promote, preserve, and secure the health of the city, and to prevent the introduction and spreading of contagious, infectious or pestilential diseases."

A demurrer was overruled to each paragraph of the answer, and plaintiff replied in seven paragraphs, the first of which is a general denial. The second paragraph of the reply set out several rules adopted by the State board of health. The fourth alleged that the local board of health, in addition to the order mentioned in the answer, had, by another rule, excepted all children from said order who presented a certificate from a physician to the effect that they were in feeble health, or were subject to scrofulous or other blood diseases. The sixth paragraph merely averred that a local board of health had been organized under an ordinance adopted by the city of Terre Haute by virtue of the provisions of the general law of the State of Indiana.

By the third paragraph of reply it was sought to show that, at the time plaintiff's son was excluded from the school in question, the danger of an epidemic of smallpox in the city of Terre Haute had passed away. By the fifth paragraph it is averred that there had been no exposure to smallpox in the city of Terre Haute, and that but one case had been reported as existing in the State, which was at

Blue *v.* Beach.

the city of Muncie. By the seventh paragraph plaintiff alleged and sought to show that vaccination in all cases produced a loathsome constitutional disease which poisoned the blood of the patient, and frequently resulted in death, and that vaccination was not a preventive of smallpox.

A demurrer was sustained to the second, fourth, and sixth paragraphs of the reply, and overruled as to the third, fifth, and seventh. Upon the issues joined, there was a trial by the court which resulted in a judgment in favor of appellees.

The evidence is not in the record, and appellant seeks a reversal of the judgment below upon the ruling of the court in holding the answer sufficient upon demurrer, and in sustaining the demurrer to the second, fourth, and sixth paragraphs of reply.

The contention of appellant's learned counsel is that each paragraph of the answer is bad, and that the facts and matters therein disclosed will not justify the appellees in excluding appellant's son from the public schools. Their insistence may be said to embrace the following propositions:

(1) The exclusion of a pupil from the public schools of this State who is "well and healthy", as the complaint discloses was the condition of Kleo Blue, and where there has been no exposure to the infection of smallpox, can not be sustained merely because such pupil refuses to be vaccinated.

(2) The right of appellant's son, under the facts shown by the complaint, to attend the public school in question is guaranteed by the Constitution, and the qualifications necessary to the exercise of this privilege are prescribed by statute, and, as there is no statute providing that vaccination of a pupil shall become a condition precedent to this privilege, hence it is contended that the order made by the local board of health was without authority of law.

(3) It is further insisted that rules or by-laws adopted by the State board and local boards of health do not have

the force of laws within their respective jurisdiction, and that the power of the State board to adopt a by-law, or rule, of the nature of rule eleven, is legislative; therefore, under article 4, §1 of the State Constitution, whereby all legislative authority is lodged in the General Assembly, the power to make such rules can not be delegated by it to boards of health.

Appellant in the course of his argument strenuously insists that vaccination is in no manner a preventive of smallpox, and that its failure in this respect is, as he contends, now conceded by many eminent medical authorities. In the objections which he urges against vaccination he, to an extent, at least, proceeds upon the assumption that the person who is subjected thereto will thereby have his system so poisoned by the vaccine virus as to result in his permanent injury. It is true that bad results may, and possibly do, follow from the use of impure virus, or when the system of the patient is itself in a diseased condition, but that such are the results in all cases where pure virus is used, and proper care and skill are exercised, is certainly nothing more than mere assumption. With equal force might it be asserted that, in all cases of the amputation of a limb, by a skilful and experienced surgeon, the death of the patient will necessarily follow as a result of the operation. We may say, however, in answer to the contention of appellant upon this feature of the case, that our decision herein does not in any manner, under the circumstances, depend upon the proposition that vaccination is a preventive of smallpox.

In addition to the arguments advanced by appellant, we have been fully supplied, during the pendency of this appeal, with many circulars and other documents denying the efficacy of vaccination. With the wisdom or policy of vaccination, or as to whether it is or is not a preventive of the disease of smallpox, courts, in the decision of cases like the one at bar, have no concern. It is a question, it is true,

about which eminent medical men differ, a large majority of whom, however, affirm that it serves as a preventive of, or a protection against, this dread scourge, which Macaulay denominated "the most terrible of all ministers of death". The question is one which the legislature or boards of health, in the exercise of the powers conferred upon them, must in the first instance determine, as the law affords no means for the question to be subjected to a judicial inquiry or determination. Consequently, in our holding in this appeal, it can not be said that we affirm the arguments of those who believe in the efficacy of vaccination, or that we deny the arguments of those who assert that it is a failure and an outrage upon personal liberty.

With this statement we pass to the consideration of the real question involved. There is no express statute in this State making vaccination compulsory, nor imposing it as a condition upon the privilege of children attending our public schools, and, in the absence of such a law, the act of appellee in excluding Kleo Blue from the public schools in question must, under the facts, be justified, if at all, as a public emergency under the rules and order of the respective boards of health as set out in the answer.

In 1891 the legislature of this State passed a statute creating and establishing a State board of health, and investing it with certain powers. See §6711 et seq. Burns 1894. By section five of the original act, §6715 Burns 1894, this board is expressly authorized and empowered to adopt "rules and by-laws subject to the provisions of this act, and in harmony with other statutes in relation to the public health, to prevent outbreaks and the spread of contagious and infectious disease." Section 6718 Burns 1894, provides that it shall be the duty of local boards of health to protect the public health by the removal of causes of disease when known, and in all cases to take prompt action to arrest the spread of contagious diseases, to abate and remove nuisances dangerous to the public health, and to perform

such other duties as may from time to time be required of them by the State board of health, pertaining to the health of the people.   By §6719 Burns 1894, it is provided: "It shall be the duty of county boards of health to promulgate and enforce all rules and regulations of the State board of health, in their respective counties, which may be issued from time to time for the preservation of the public health, and for the prevention of epidemic and contagious diseases. And the secretary of any board of health, who shall fail or refuse to promulgate and enforce such rules and regula- tions, and any person or persons, or the officers of any cor- poration who shall fail or refuse to obey such rules and regulations, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not ex- ceeding $100, and upon a second conviction the court or jury trying the cause may add imprisonment in the county jail, for any period not exceeding ninety days."

By §6725 Burns 1894, the Governor of the State is em- powered to draw a warrant upon the State's treasury, for money in any sum not exceeding $50,000, to be expended in preventing the introduction into the State, and the spread, of cholera and other contagious and infectious diseases.

Under the general law, by which the city of Terre Haute is governed, the legislature expressly conferred upon its common council the power to establish a board of health, and to invest it with the necessary power to attain its object. This power the common council of that city seems to have exer- cised by establishing a board of health, under the ordinance of 1881, and investing it with authority to make and en- force such rules and regulations as the board might deem necessary "to promote, preserve, and secure the health of the city, and to prevent the introduction and spreading of contagious, infectious, or pestilential diseases."

Rule eleven of the State board of health, which appears to have been adopted and promulgated in 1891, soon after the organization of that board, provides, as we have seen,

that in all cases where an exposure to smallpox is threatened, it shall be the duty of the board of health within whose jurisdiction such exposure shall have occurred, or danger of such epidemic ensuing, to compel the vaccination or revaccination of all exposed persons. Pursuant to this rule, and in the exercise of the powers with which it was generally invested, this local board, after expressly finding that there had been and is an exposure to and danger of an epidemic of smallpox within the limits of the city of Terre Haute, made and promulgated the order in controversy, to the effect that no person be allowed to attend the public schools of that city without being vaccinated. In obedience to this order, it appears that the superintendent of the city's public schools directed appellees not to permit any person to attend the school over which they were in charge unless such person had been vaccinated.

That the rule or by-law adopted by the State board of health and the order of the local board were each intended to secure and protect the public health, by preventing the spread in its virulent form of the contagious and loathsome disease of smallpox, there certainly can be no doubt. That the preservation of the public health is one of the duties devolving upon the State, as a sovereign power, can not be successfully controverted. In fact, among all of the objects sought to be secured by governmental laws, none is more important than the preservation of the public health; and an imperative obligation rests upon the State, through its proper instrumentalities or agencies, to take all necessary steps to promote this object. This duty finds ample support in the police power which is inherent in the State and one which the latter can not surrender.

In the case of *State* v. *Gerhardt,* 145 Ind. 439, 33 L. R. A. 313, on page 451 of the opinion, in speaking in reference to the police power, it is said: "The police power of a State is recognized by the courts to be one of wide sweep.

Blue v. Beach.

It is exercised by the State in order to promote the health, safety, comfort, morals, and welfare of the public. The right to exercise this power is said to be inherent in the people in every free government. It is not a grant, derived from or under any written constitution. It is not, however, without limitation, and it can not be invoked so as to invade the fundamental rights of a citizen. As a general proposition, it may be asserted that it is the province of the legislature to decide when the exigency exists for the exercise of this power, but as to what are the subjects which come within it, is evidently a judicial question." See also *Champer* v. *City of Greencastle,* 138 Ind. 339, 24 L. R. A. 768.

In order to secure and promote the public health, the State creates boards of health as an instrumentality or agency for that purpose, and invests them with the power to adopt ordinances, by-laws, rules, and regulations necessary to secure the objects of their organization. While it is true that the character or nature of such boards is administrative only, still the powers conferred upon them by the legislature, in view of the great public interests confided to them, have always received from the courts a liberal construction, and the right of the legislature to confer upon them the power to make reasonable rules, by-laws, and regulations, is generally recognized by the authorities. Parker & Worth. on Pub. Health, §79; 4 Am. & Eng. Ency. of Law, 597; *Lake Erie, etc., R. Co.* v. *James,* 10 Ind. App. 550.

When these boards duly adopt rules or by-laws, by virtue of legislative authority, such rules and by-laws, within the respective jurisdictions, have the force and effect of a law of the legislature, and, like an ordinance or by-law of a municipal corporation, they may be said to be in force by authority of the State. *City of Salem* v. *Eastern R. Co.,* 98 Mass. 431, 96 Am. Dec. 650; *Board of Health* v. *Heister,* 37 N. Y. 661; *Gregory* v. *Mayor, etc.,* 40 N. Y. 273;

*Polinsky* v. *People,* 73 N. Y. 65; *Dingley* v. *City of Boston,* 100 Mass. 544; *Swindell* v. *State,* 143 Ind. 153, 168, 35 L. R. A. 50; *People* v. *Justices, etc.,* 7 Hun 214; Parker & Worth. on Pub. Health, §85; 4 Am. & Eng. Ency. of Law (2nd ed.) 599.

It is true that such rules and by-laws must be reasonable, and boards of health can not enlarge or vary, by the operation of such rules, the powers conferred upon them by the legislature, and. any rule or by-law which is in conflict with the State's organic law, or antagonistic to the general law of the State, or opposed to the fundamental principles of justice, or inconsistent with the powers conferred upon such boards, would be invalid.   Parker & Worth. on Pub. Health, §86.

As a general proposition, whatever laws or regulations are necessary to protect the public health and secure public comfort is a legislative question, and appropriate measures, intended and calculated to accomplish these ends, are not subject to judicial review.   But, nevertheless, such measures or means must have some relation to the end in view, for, under the mere guise of the police power, personal rights and those pertaining to private property will not be permitted to be arbitrarily invaded by the legislative department; and consequently its determination, under such circumstances, is not final, but is open to review by the courts.   If the legislature, in the interests of the public health, enacts a law, and thereby interferes with the personal rights of an individual, destroys or impairs his liberty or property, it then, under such circumstances, becomes the duty of the courts to review such legislation, and determine whether it in reality relates to and is appropriate to secure the object in view; and in such an examination the court will look to the substance of the thing involved, and will not be controlled by mere forms.   *In re Jacobs,* 98 N. Y. 98; *Weil* v. *Ricord,* 24 N. J. Eq. 169.

It is affirmed by the authorities as a general proposition

or rule that no one has a right to do any act which will cause injury to the health of another, or which will disturb his bodily comfort; still, this right of security to health or comfort can not remain absolute in a state of organized society, but is sometimes required to give way to the demands of trade or other vital public interests. Tiedeman's Lim. of Police Powers, §16.

It can not be successfully asserted that the power of boards of health to adopt rules and by-laws subject to the provisions of the law by which they are created, and in harmony with other statutes in relation to the public health, in order that the "outbreak and spread of contagious and infectious diseases" may be prevented, is an improper delegation of legislative authority, and a violation of article 4, §1 of the Constitution. It is true beyond controversy that the legislative department of the State, wherein the Constitution has lodged all legislative authority, will not be permitted to relieve itself of this power by the delegation thereof. It can not confer on any body or person the power to determine what the law shall be, as that power is one which only the legislature, under our Constitution, is authorized to exercise; but this constitutional inhibition can not properly be extended so as to prevent the grant of legislative authority, to some administrative board or other tribunal, to adopt rules, by-laws, or ordinances for the government of or to carry out a particular purpose. It can not be said that every grant of power to executive or administrative boards or officials, involving the exercise of discretion and judgment, must be considered a delegation of legislative authority. While it is necessary that a law, when it comes from the law-making power, should be complete, still there are many matters relating to methods or details which may be, by the legislature, referred to some designated ministerial officer or body. All of such matters fall within the domain of the right of the legislature to authorize an administrative board or body to adopt ordinances,

rules, by-laws, or regulations in aid of the successful execution of some general statutory provision.   Cooley Const. Lim. 114.

The rule in respect to the delegation of legislative power is admirably stated in *Locke's Appeal*, 72 Pa. St. 491, as follows:   "Then, the true distinction, I conceive, is this: The legislature can not delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.   To deny this would be to stop the wheels of government.   There are many things upon which wise and useful legislation must depend, which can not be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation."

That the power granted to administrative boards of the nature of boards of health, etc., to adopt rules, by-laws, and regulations reasonably adapted to carry out the purpose or object for which they are created, is not an improper delegation of authority within the meaning of the constitutional inhibition in controversy, is no longer an open question, and is well settled by a long line of authorities.   See *Board, etc., v. Spitler,* 13 Ind. 235; *Welch v. Bowen,* 103 Ind. 252; *City of Madison v. Abbott,* 118 Ind. 337; *Farley v. Board, etc.,* 126 Ind. 468; *Eastman v. State,* 109 Ind. 278; *State v. Haworth, Tr.,* 122 Ind. 462, 7 L. R. A. 240; *Cleveland, etc., R. Co. v. Backus,* 133 Ind. 513, 522, 18 L. R. A. 729; *State v. Chicago, etc., R. Co.,* 38 Minn. 281; *State v. Chicago, etc., R. Co.,* 134 U. S. 418; *Interstate Commerce Commission v. Cincinnati, etc., R. Co.,* 167 U. S. 479, 17 Sup. Ct. 896, 12 L. ed. 243; *Woodruff v. New York, etc., R. Co.,* 59 Conn. 63, 20 Atl. 17; *Storrs v. Pensacola, etc., R. Co.,* 29 Fla. 617, 11 South. 226; *Atlantic Express Co. v. Wilmington, etc., R. Co.,* 111 N. C. 463, 16 S. E. 393, 18 L. R. A. 393; *State v. Hagood,* 30 S. C. 519, 9 S. E. 686, 3 L. R. A. 841; *Field v. Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. ed. 294.

It would seem that the power of the boards of health of this State, under the laws relating thereto to make and adopt all reasonable by-laws, rules, and regulations to carry out and effectuate the great interests of the public health confided to them by the legislature, is so well affirmed by the authorities that we may dismiss this feature of appellant's contention without further consideration. In the light of the firmly settled principles of the law to which we have referred, we may proceed, under the facts, to test thereby the acts of appellees in excluding Kleo Blue from school.

Under the ordinance of the city's common council establishing the local board of health, the latter was, as we have seen, invested with power to adopt and enforce such rules and regulations as it might deem necessary to secure, promote, and preserve the public health, and to prevent the spread of contagious and infectious diseases. By the provisions of the statute creating the State board of health, the imperative duty to protect the public health by the removal of causes of diseases when known, and to take prompt action to arrest the spread of contagious diseases, and to perform such other duties as may from time to time be required by the State board, is expressly enjoined upon all local health boards.

It is certainly evident that the health board of the city of Terre Haute, regardless of the rule of the State board, had, under the law, ample power to protect the public health, and to prevent the spread of contagious and infectious diseases, and for such purposes had the right to adopt such appropriate and reasonable means or methods as its judgment dictated. This being true, and an emergency on the account of danger from smallpox having arisen, and the board believing, as we may assume, that the disease would spread through the public schools, and further believing that it could be prevented, or its bad effects lessened, by the means of vaccination, and thereby afford protection to

the pupils of such schools and the community in general, it would certainly have the right, under the authority with which it was invested by the State, to require, during the continuance of such danger, that no unvaccinated child be allowed to attend the public school; or the board might, under the circumstances, in its discretion, direct that the schools be temporarily closed during such emergency, regardless of whether or not the pupils thereof refused to be vaccinated.

If vaccination was the most effective means of preventing the spread of the disease through the public schools, and this the local board seems to have determined, it then became not only the right but the duty of the board to require that the pupils of such schools be vaccinated as a sanitary condition imposed upon their privilege of attending the schools during the period of the threatened epidemic of smallpox. This power, as previously asserted, under the circumstances, was lodged in the local board of health irrespective of the rule of the State board. The rule or by-law of the latter merely emphasizes what was already the duty of local boards, in their respective jurisdictions, in times of danger of a smallpox epidemic, to enforce vaccination, if that was believed to be the best and most efficient method or means known of arresting or preventing the spread of the disease. That this was the belief of the State board when it adopted its by-law, and also of the local board when it made its rule or order in question, is certainly evident. It is declared in the order of the latter that "vaccination is the only preventive of the disease of smallpox."

The local board did not attempt, under its order, to compel appellant's son to be vaccinated. Under a reasonable interpretation of its order, the board simply gave him the option or choice either to be vaccinated or remain out of school until the danger of smallpox had passed. The facts alleged in the answer show that there had been an exposure

in the community to smallpox, and that there was danger of an epidemic of that disease within the city of Terre Haute. Evidently then, under these circumstances, prompt action upon the part of the health authorities, in taking steps to arrest or prevent the spread of the disease, was essential. The first step taken by the board, it appears, was to prevent the spread thereof throughout the community by the children who each day assembled at the public schools from all parts of the city.

It is a well recognized fact that our public schools in the past have been the means of spreading contagious diseases throughout an entire community. They have been the source from which diphtheria, scarlet fever, and other contagious diseases have carried distress and death into many families. Surely there can be no substantial argument advanced adverse to the reasonableness of a rule or order of health officials which is intended and calculated to protect, in a time of danger, all school children, and the families of which they form a part, from smallpox or other infectious diseases.

In several of our sister states, laws have been enacted expressly requiring vaccination; some requiring it, however, only as a prerequisite to the privilege of attending the public schools, while others enforce it against all persons. In the case of *Abeel* v. *Clark,* 84 Cal. 226, 24 Pac. 383, the supreme court of that state upheld the constitutional validity of a statute requiring that all children attending the public schools should be vaccinated. In sustaining the act the court, in the course of its opinion, said: "The act referred to is designed to prevent the dissemination of what, notwithstanding all that medical science has done to reduce its severity, still remains a highly contagious and much dreaded disease. While vaccination may not be the best and safest preventive possible, experience and observation, the test of the value of such discoveries, dating from the year 1796, when Jenner disclosed it to the

world, has proved it to be the best method known to the medical science to lessen the liability to infection with the disease."

In *Bissell* v. *Davison,* 65 Conn. 183, 32 Atl. 348, 29 L. R. A. 251, the validity of a law, authorizing school trustees to make vaccination a condition upon the privilege of children attending the public schools, was sustained. The court in that appeal said: "The question before us is not whether the legislature ought to have passed such a law; it is simply whether it had the power to pass it. In no proper sense can this statute be said to contravene the provisions of section one of the first article of our state constitution, as claimed by the plaintiff. It may operate to exclude his son from school, but if so it will be because of his failure to comply with what the legislature regards, wisely or unwisely, as a reasonable requirement, enacted in good faith to promote the public welfare."

In *Duffield* v. *Williamsport School District,* 162 Pa. St. 476, 29 Atl. 742, 25 L. R. A. 152, appellant's minor son had been excluded from the public schools of the city of Williamsport. The expulsion, it appears, was under the authority of an ordinance adopted by the city which provided that "no pupil shall attend the schools of this city except they be vaccinated, or furnish a certificate from a physician that such vaccination has been performed." The school board in that case was notified by the board of health of an epidemic of smallpox prevailing in near-by cities and towns. Upon considering the communication from the board of health, and from the general alarm arising from a case of smallpox in that city, the school board adopted a resolution providing that no pupil should attend the public schools unless he had been vaccinated. The power to exclude appellant's son, under the circumstances in that case, was upheld. The court in passing upon the question there involved, said: "It should be borne in mind that there is no effort to compel vaccination. The

school board do not claim that they can compel the plaintiff
to vaccinate his son. They claim only the right to exclude
from the schools those who do not comply with such regu-
lations of the city and the board of directors as have been
thought necessary to preserve the public health. It would
not be doubted that the directors would have the right to
close the schools temporarily during the prevalence of any
serious disease of an infectious or contagious character.
This would be a refusal of admission to all the children of
the district. They might limit the exclusion to children
from infected neighborhoods, or families in which one or
more of the members was suffering from the disease. For the
same reason they may exclude such children as decline to
comply with the requirements looking to prevention of the
spread of contagion, provided these requirements are not
positively unreasonable in their character."

*In re Rebenack,* 62 Mo. App. 8, the St. Louis board of
public schools ordered that all unvaccinated children should
be excluded from the public schools of that city. In that
case, the charter law, under which the board of public
schools was created, provided that the president and di-
rectors thereof should have the power "to make all rules,
ordinances, and statutes, proper for the government and
management of such schools and property, so that the same
shall not be inconsistent with the laws of the land." The
court in that case held that the school board had the right
to require the vaccination of children in attendance at
school, and to exclude those therefrom who refused to com-
ply with the order.

In *Morris* v. *City of Columbus,* 102 Ga. 792, 30 S. E.
850, 42 L. R. A. 175, the supreme court of that state held
that the legislature, in the exercise of the police power, may
confer upon municipal corporations the authority to make
and enforce ordinances requiring all persons, who may be
within the limits of such corporations, to submit to vacci-
nation whenever an epidemic of smallpox is existing, or may

be reasonably apprehended.   See, also, *In re Walters,* 32
N. Y. Supp. 322.

In Parker & Worth. on Pub. Health, §123, the rule is
stated as follows:   "It is sometimes provided by law that
persons who may have been exposed to contagion, or who
came from places believed to be infected, and particularly
children attending the public schools, shall submit to vac-
cination, under the direction of the health authorities.
This requirement is a constitutional exercise of the police
power of the state, which can be sustained as a precau-
tionary measure in the interest of the public health."

In the case of *Potts* v. *Breen,* 167 Ill. 67, 47 N. E. 81,
39 L. R. A. 152, it is held, in the absence of an express
authority from the legislature, that a rule of the State
board of health, requiring the vaccination of children as a
prerequisite to their attending the public schools, is unrea-
sonable when smallpox does not exist in the community and
there is no reasonable ground to apprehend its appearance.
The same doctrine is reaffirmed in the case of *Lawbaugh* v.
*Board of Education,* 177 Ill. 572, 52 N. E. 850.

In the appeal of the *State* v. *Burdge,* 95 Wis. 390, 70
N. W. 347, 37 L. R. A. 157, it is also affirmed that, in the
absence of a statute authorizing compulsory vaccination, or
making it a condition to the privilege of attending the pub-
lic schools, a rule of the State board of health which ex-
cludes from the public and other schools all children who
do not present a certificate of vaccination is unreasonable,
if, at the time of its adoption, there was no smallpox epi-
demic in the city, and no sufficient cause for the school au-
thorities to believe that the disease would become prevalent
in the city where the rule was sought to be enforced.   The
court in that case, speaking in respect to the powers of
health boards, said:   "It can not be doubted but that, under
appropriate general provisions of law in relation to the
prevention and suppression of dangerous and contagious
diseases, authority may be conferred by the legislature

upon the state board of health or local boards to make reasonable rules and regulation for carrying into effect such general provisions, which will be valid, and may be enforced accordingly. The making of such rules and regulations is an administrative function, and not a legislative power, but there must first be some substantive provision of law to be administered and carried into effect. The true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law.' The first can not be done. To the latter, no valid objection can be made."

Neither the holding of the supreme court of Illinois nor Wisconsin, in the cases mentioned, can, under the facts, be said to militate against the conclusion which we reach in the case at bar. In fact, there is much asserted in both cases which may be said to be in harmony with our holding herein. We are not called upon, however, to decide whether a rule of either the State board or local board of health can be carried beyond the limits of the facts in this case. Appellant contends that, under the order of the local board, his son was to be permanently expelled from the public schools of the city of Terre Haute, unless he submitted to vaccination. No such unreasonable interpretation can be placed upon the rule or order in question. The order was the offspring, as we have seen, of an emergency arising from a reasonable apprehension upon the board's part that smallpox would become epidemic or prevalent in the city of Terre Haute. The rule or order could not be considered as having any force or effect beyond the existence of that emergency, and Kleo Blue, by virtue of its operation, could only be excluded from school, upon his refusal to be vaccinated, until after the danger of an epidemic of smallpox

had disappeared. Any other construction than this would render the rule or order absurd, and place the board in the attitude of attempting to usurp authority. Such an interpretation is not authorized when a more reasonable one can be applied.

It is true, as insisted, that the privilege of children in this State to attend the public schools is guaranteed by the Constitution, at least to the extent that tuition shall be free and such schools shall be equally open to all. Article 8 §1 of the Constitution. *Cory* v. *Carter,* 48 Ind. 327, 17 Am. R. 738. It is equally true, however, that they are frequently denied this privilege by reason of their refusal to submit to the proper rules of school discipline.

There is no express law in this State authorizing the expulsion from school of boisterous or disobedient pupils. That a rule to this effect, upon the part of school officials or teachers, may be enforced, no one will controvert. If expulsion can result from the violation of a rule, the object of which is to promote the morals of the scholars and the efficiency of the school in general, certainly one which is intended and calculated to promote the health of the scholars ought to be sustained.

There is nothing disclosing that appellant's son was in a condition of health which would exempt him from the requirements of this order but, upon the contrary, it was shown that he was "well and healthy". It is said in appellant's brief that there was no investigation upon the part of the health authorities to ascertain whether his son had been exposed to smallpox. It appears, however, that there had been an exposure upon the part of the community, and it would be an absurdity, under such circumstances, to require the health officials, before taking action to prevent the spread of the disease, to investigate in order to determine the degree of exposure to which every person in the community had been subjected. The question as to what is an exposure to smallpox, so as to be affected thereby, is cer-

tainly one which in the main must be left to the sound dis-
cretion or judgment of the health officers.

The supreme court of Massachusetts, in *City of Salem*
v. *Eastern R. Co.*, 98 Mass. 431, 443, in speaking in re-
gard to the right of boards of health to make general orders
and enforce them without unnecessary delay, said: "Their
action is intended to be prompt and summary. They are
clothed with extraordinary powers for the protection of the
community from noxious influences affecting life and
health, and it is important that their proceedings should be
embarrassed or delayed as little as possible by the neces-
sary observance of formalities."

The exclusion of appellant's son was not, as insisted, in
the nature of a penalty, neither can the rule or order in
question be considered as compelling his vaccination. It,
as previously said, was only a prerequisite to his attend-
ance at school during the period of danger.

Owing to the public importance of the questions involved
in this case, we have given them much consideration, and
perhaps have unnecessarily extended this opinion, but,
under the facts, when tested by the firmly settled legal prin-
ciples, we are constrained to uphold the order of the local
board of health of the city of Terre Haute as a valid exer-
cise of power upon its part; and we therefore conclude that
appellees were justified in excluding appellant's son from
the public school during the continuance of the emergency,
or danger from smallpox. It follows, therefore, that the
court did not err in overruling the demurrer to each para-
graph of the answer, nor in sustaining appellees demurrer
to the second, fourth, and sixth paragraphs of the reply.

The judgment is affirmed.