STATE ex rel. FRANK D. FREEMAN v. BERNARD ZIMMERMAN
and Others.[1]

June 6, 1902.

Nos. 12,973—(124).

## Public Health—Powers of Municipalities.

Legislative grants of power to municipalities, intended to secure the preservation of the public health, and to provide for the enforcement of proper and necessary sanitary regulations to prevent the spread of contagious diseases, are, notwithstanding the individual liberty of the citizen is, in a measure, involved, entitled to a broad and liberal construction by the courts, in aid of the beneficial purposes of their enactment.

## Same—Home Rule Charter.

The various provisions of a municipal charter, adopted under the constitution authorizing cities to frame their own charters, as to subjects properly belonging to the government of municipalities, have all the force and effect of legislative enactments.

## Same—City of St. Paul.

The provisions of the charter of the city of St. Paul, adopted under and pursuant to constitutional authority, providing for a commissioner of health, and defining his duties, *held* valid, and, as respects the duties there imposed on such commissioner, self-executing, requiring no action on the part of the board of health or the city council to authorize the performance of the same.

[1] Reported in 90 N. W. 783.

86 M.—23

Vaccination of School Children.

> A general grant of power, in broad and comprehensive terms, to do all acts and make all rules and regulations deemed necessary and expedient for the preservation of the public health, vests in the authorities to whom granted power to enforce, in cases of emergency rendering it reasonably necessary in the interests of the public health, and for the prevention of the spread of smallpox, a regulation requiring children to be vaccinated, as a condition to their admission to the public schools.

Same.

> Such a regulation made by the commissioner of health of the city of St. Paul held valid and enforceable.

Appeal by relator from an order of the district court for Ramsey county, Bunn, J., denying a motion for a new trial. Affirmed.

*Frederic A. Pike,* for appellant.

*James E. Markham, Franklin H. Griggs* and *Thomas McDermott,* for respondents.

BROWN, J.

Mandamus to compel respondents, who are members of the board of school inspectors for the city of St. Paul, to admit Edith Freeman, a child eight years of age, and a resident of that city, to the public schools of said city. She was refused admission because of the fact that she had not complied with certain regulations of the board requiring pupils to be vaccinated. Respondents had judgment in the court below, and relator appeals.

The cause came on for trial in the court below upon the allegations contained in the writ and respondents' answer. The trial court submitted three questions to a jury, namely:

"1. Was there in the month of January, 1901, an epidemic of smallpox in St. Paul, or the territory tributary thereto, or was there at that time danger to the public health from the existence and threatened spread of such disease?
2. Is vaccination a preventive of, or does it materially assist in preventing the disease of smallpox, or the spread of such disease?
3. Under the conditions as they existed in January, 1901, was it a reasonable regulation to require children attending the public schools of the city of St. Paul to have been vaccinated within five years?"

The jury answered each question in the affirmative.

The question whether the public authorities may require the vaccination of children, as a condition precedent to their right to attend public schools, has been much discussed by the courts. The authorities are not uniform on the subject. By some courts it is held that the power exists and may be exercised without regard to the existence of an emergency occasioned by an epidemic of smallpox; other authorities limit the right to exercise the power, whether expressly conferred by legislative enactment or not, to the presence of an epidemic, and when there is imminent danger of the disease spreading among the people of the community; and by still other courts that, even without legislative authority, health officers possess the power to impose such conditions, and may enforce them in cases of emergency amounting to "an overruling necessity." An interesting discussion of the subject may be found in 4 Law Notes, 224.

But whatever may be the correct rule to apply to controversies of this kind, if the power may be exercised under any circumstances, where legislative authority has been granted, it should be where, as in the case at bar, there is an epidemic of smallpox, and imminent danger of its spreading. The courts are not concerned with the question of the efficacy of this treatment, nor with considerations relative to its necessity and propriety as a police regulation, except, perhaps, in those cases where an abuse of power is pleaded and shown. The treatment may be, as claimed by some, a gross interference with individual liberty, or, as claimed by others, a certain preventive of a much-dreaded disease, and the spread of the same, and therefore a great public benefactor. We are not to be understood as expressing an opinion upon the merits of the treatment. It was said by the supreme court of the state of Indiana that "the question is one which the legislature or boards of health, in the exercise of the powers conferred upon them, must in the first instance determine, as the law affords no means for the question to be subjected to a judicial inquiry or determination." Blue v. Beach, 155 Ind. 121, 127, 56 N. E. 89. This is in line with the general rule that the exercise of the police power is a matter resting in the discretion of the legislature, or the board or tribunal to which the power is delegated, in the exercise of

which power the courts will not interfere, except where the regulations adopted for that purpose are arbitrary, oppressive, and unreasonable. State v. Barge, 82 Minn. 256, 84 N. W. 911; Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69; 18 Am. & Eng. Enc. (1st Ed.) 746.

But these suggestions are only incidental, and of no particular importance. Counsel for relator does not contend that the subject is not within the control of the legislature, and may not be delegated to municipal authorities. His main contention, and upon which he relies for reversal, is that the legislature of the state has never conferred the power upon the board of education, the common council, or the health officers of the city of St. Paul, and, further, if it be shown that authority has been so conferred, that it does not appear ever to have been put into operation by them, and was not acted on by respondents in this case. Whether such authority has been conferred is the principal question in the case.

We may adopt for present purposes the rule that the power to enforce vaccination, as a condition to the right of admission to the public schools, may be exercised by local authorities in cases of emergency only, and not then unless expressly or by fair implication conferred upon them by the legislature; and, if that power be found wanting in this case, a reversal must follow. That there was an emergency prompting the action of respondents in this case, and that vaccination is effective for the purposes claimed for it, and that to require all children to be vaccinated was a proper and reasonable regulation, are questions which not only the local authorities have determined, but which the verdict of the jury affirms. It remains to inquire whether the power existed, and whether the proceedings complained of were founded thereon. The basis of the authority, whether exercised directly by the legislature, or through local officers, is the police power. This the legislature may in all cases itself exercise in the interests of the public health and welfare, or delegate to municipal authorities and inferior boards and tribunals. There is no claim that the legislature itself has ever imposed vaccination as a condition precedent to the right of children to attend the public schools of St. Paul, and we turn at once to the question whether the authority to enforce such

a regulation has ever been delegated to the authorities of that city.

The authority of boards of health legally organized in cities and villages of this state, or other bodies designated to act as boards of health, is prescribed, as a rule, by general enactments of the legislature, or by municipal charters. Power is usually conferred in ample measure to secure the preservation of public health, and to provide for the enforcement of all proper and necessary sanitary regulations, and for the summary suppression of all conditions detrimental to the lives and health of the people. In view of the importance of the interests confided to the care of health officers, the various statutes conferring such powers should, notwithstanding the individual liberty of the citizens is in a large measure involved, receive a broad and liberal construction in aid of the beneficial purposes of their enactment. Parker & W., Pub. Health, § 79. And the courts should be cautious in declaring any curtailment of their authority, except upon clear grounds. Gregory v. City, 40 N. Y. 273. With this rule in mind, we shall consider some of the sections of the statutes which are relied upon to confer the authority exercised in this case.

Section 7048, G. S. 1894, provides, among other things, that all villages and cities in the state shall have a board of health, to be chosen and consist of the number as therein designated, "anything in the charter of any such village, borough or city, to the contrary notwithstanding." It also provides that such boards shall within their respective villages and cities "have and exercise all the powers necessary for the preservation of the public health," and they are authorized to make such rules and regulations as may be deemed necessary for the health and safety of the inhabitants, and, further, that any person who shall violate any such regulation shall be deemed guilty of a misdemeanor. Section 7045 provides:

"Whenever any part of this state appears to be threatened with, or is affected by, any epidemic or infectious disease, the state board of health may make, and from time to time alter and revoke regulations for all or any of the following, among other purposes: * * * Guarding against the spread of disease by quarantine or exclusion of any infected persons; and may by order declare all or any of the regulations so made to be in force within the whole or any part or parts of the district of any local board of health in this state."

Section 7047 provides:

"The local board of health of any district or districts within which, or part of which, regulations so issued by the state board of health are declared to be in force, shall superintend and see to the execution thereof  *  *  *  and do and provide all such acts, matters and things as may be necessary for mitigating or preventing the spread of any such disease."

The provisions of the last two sections cited are of no special importance, for it is not claimed that the state board of health took any part in the proceedings here in question, but they tend in a general way to show an intention on the part of the legislature to clothe all boards of health with general supervisory powers in matters pertaining to the public health and sanitary conditions.

It will be noted that none of the provisions of the statutes just quoted expressly authorizes municipal authorities or health officers to require children to be vaccinated, as a condition precedent to their admission to the public schools; yet we have no hesitation in holding (giving the several provisions referred to a broad and liberal construction) that the legislature intended to confer such power upon them. A broad and comprehensive delegation of power to do all acts and make all regulations for the preservation of the public health as are deemed expedient confers, by fair implication, at least, the power sought to be exercised in this case. In the case of In re Rebenack, 62 Mo. App. 8, a legislative grant of power to a school board "to make all rules, ordinances, and statutes proper for the government and management of such schools" was held sufficient authority for a regulation requiring children to be vaccinated, as a condition to their right to attend school. A general grant of power to do all acts necessary for the preservation of the public health and welfare was held to authorize a similar regulation in Indiana. Blue v. Beach, 155 Ind. 121, 127, 56 N. E. 89. The same conclusion was reached in Hazen v. Strong, 2 Vt. 427, and in Duffield v. Williamsport, 162 Pa. St. 476, 29 Atl. 742.

But the necessary power and authority to support the action of respondents is not dependent alone on the general statutes cited. The charter of the city of St. Paul confers ample power to that end in definite and explicit terms. This charter was enacted by the

citizens under and pursuant to constitutional and legislative authority, and it was within their power to include as a subject-matter thereof provisions relating to a health department. Such a department very properly belongs and is incident to the government of municipalities (State v. O'Connor, 81 Minn. 79, 83 N. W. 498), and the provisions of the charter, of which we are required to take judicial notice (Laws 1899, c. 351), have all the force and effect of legislative enactments.

This charter provides for and creates a health department for the city, designating certain officers as members of that department. By section 2, c. 10, the office of commissioner of health is created; and the occupant of that position is made the head of the department, and is clothed with the management and control of all matters and things pertaining thereto. By section 25 of the same chapter the commissioner is empowered to make such rules and regulations for the government or health of the city as he may, from time to time, deem necessary and expedient. Section 9 makes it his duty to enforce all the laws of the state and ordinances of the city relating to sanitary regulations, and to cause all nuisances to be abated with reasonable promptness. Section 15 provides that in case of pestilence or epidemic disease, or of danger of impending pestilence, it shall be the duty of the commissioner to take such measures, and to do and order, and cause to be done, for the preservation of the public health as he may in good faith deem the public safety to demand. By section 16 he is expressly required to take such measures as may be deemed necessary to prevent the spread of smallpox, by requiring all persons in the city not vaccinated to be vaccinated within such time as he shall prescribe. Section 33 authorizes him to require a certificate of vaccination as a condition to the admission of children to the public schools. The authority thus granted and the duties imposed are ample to sustain the commissioner of health in the regulation ordered enforced in this instance, if the general statutory provisions be insufficient.

It is further contended that the proceedings complained of were not founded on any valid regulation authorizing them. That the commissioner acted and made an order or regulation requiring all

children of school age to be vaccinated, as a condition precedent to their admission to the public schools, is not disputed. It is urged, however, that, as he assumed to act under and by authority of an ordinance of the city of St. Paul, his order was a nullity, because of the invalidity of the ordinance, and, further, that, as the ordinance was not admitted in evidence on the trial below, it is not now before this court. We do not find in the charter any provision requiring the board of health to authorize previously, or subsequently affirm, any act that may be deemed necessary to be taken by the commissioner for the preservation of the public health. The provisions of the charter in respect to the express duties imposed upon that officer are self-executing, requiring no action on the part of the board of health or city council to authorize the performance of the same. He is made the executive officer of the health department, and is required to perform the several acts and duties specified, without reference to any action taken by the board. It is not controlling that he assumed to proceed by authority of an ordinance, for the warrant justifying the regulation made by him is found in the provisions of the statutes and the charter we have quoted. Had he stated in the order that it was founded on a regulation of the police department, it would have been none the less valid and enforceable.

In addition to the rule or order of the commissioner, it appears that the school board had previously enacted a by-law or rule directly covering the subject. This rule provides, among other things, that a pupil applying for admission for the first time to the public schools must be accompanied by a parent or guardian, who shall give satisfactory evidence that the child has been vaccinated within five years. This rule was enacted a number of years ago, and it is contended by relator that it is void because arbitrary and unreasonable, and not enacted in the presence of an epidemic of smallpox. Whether this is so or not, we need not determine. The commissioner of health did not act by its authority, and the existence of the rule is not necessary to the validity of his order. In addition to this rule, however, the school board expressly acquiesced in the order of the commissioner, and directed the principals of the several city schools to

obey and follow its instructions; and, if affirmative action on their part was at all essential to the validity of the action taken by the commissioner, this act on the part of the board answered that purpose. From all this it must follow—and there is no escape from the conclusion—that the proceedings complained of on the part of respondents were fully authorized by law.

It is very true that the statutes of our state provide that admission to the public schools shall be free to all persons of a defined age and residence, and that every parent having control of any child of school age is expressly required to send such child to school, and that all teachers are required to receive them, and that, if any child of school age is denied admission or suspended or expelled without sufficient cause, the board or other officers may be fined. But all these statutory provisions must be construed in connection with, and subordinate to, the statutes on the subject of the preservation of the public health and the prevention of the spread of contagious diseases. The welfare of the many is superior to that of the few, and, as the regulations compelling vaccination are intended and enforced solely for the public good, the rights conferred thereby are primary and superior to the rights of any pupil to attend the public schools.

Our conclusions are in harmony with those reached by the learned trial judge, and the order appealed from is affirmed.