Crew, J.
On September 20th, 1905, relator, William A. Milhoof, a citizen, taxpayer and resident of the village of Barberton, Summit county, Ohio, filed his petition in the circuit court of said county against the defendant in error, The-Board of Education of the Village of Barberton, praying for a writ of mandamus to compel the defendant to admit the children of relator to the public schools of said village of Barberton, without requiring them to be vaccinated. The issues having been duly made up, the cause was submitted to the circuit court upon the pleadings and evidence, and the court being fully advised in the premises — at the request of relator that its, findings of fact be stated separately from its conclusions of law — found and stated as its conclusions of fact;
“1. That said relator is a citizen, taxpayer and resident of the village of Barberton, Summit county, Ohio. 2. That said defendant is the Board of Education of the Village of Barberton, duly organized and existing under and by virtue of the laws of the state of Ohio, and as such board of education, has jurisdiction and control of the public schools of said village of Barberton. 3. That said relator is the father of two children of the names and ages, respectively, as follows, to-wit: Henry, aged nine years, and Jennie, aged six years. 4. That said children are under his care, custody and control, and but for the *300 adoption and enforcement of the rule with respect to vaccination hereinafter set forth, are entitled to attend the public schools of the village of Barber-ton. 5. That said children on the fifth day of September, A. D. .1905, and ever since said last mentioned date, have been denied admission to the public schools of the village of Barberton for the sole reason that .their parents have neglected and refused to comply with the rules stated in the seventh finding. 6. That relator’s children have not been vaccinated, • neither have they presented a physician’s certificate excusing them therefrom. 7. That in the spring of the year 1903, and also from November 15, 1903, to January 22, 1904, smallpox was epidemic in said village of Barber-ton, and on or about the twenty-third day of November, 1903, the board of education of said village adopted a rule that 'No child shall be admitted into the public schools after December 1, 1903, not having physician’s certificate showing successful vaccination, or a physician’s certificate excusing said child therefrom, such excuse to be approved by the board of education/ 8. The court further finds that the disease of smallpox is not prevalent at the present time in said village of Barberton, nor in said school district, nor in the community where relator and his said children reside, and at the present time there is.no threatened epidemic of smallpox, nor has there been a threatened epidemic of smallpox since said twenty-second day of January, 1904; that there is no evidence tending to show that the children of the relator have been exposed to smallpox. ’ 9. That the village of Barberton is largely a manufacturing town, having a population of over five thou *301 sand, many of whom are a transient class, and that said village is located within five miles of 'the city of Akron.”
As its conclusion of law, from the foregoing facts, the court found and adjudged as follows: “That said defendant had the right to adopt the rule aforesaid, and to enforce the same as a permanent rule or regulation, and to exclude relator’s children thereunder from attending the public schools of the village of Barberton; and the petition of the relator is hereby dismissed at the costs of the relator.” It will be seen from the foregoing that the children of relator were refused admission to the public schools of the village of Barberton on the ground, and for the reason only, that they had not complied and would not comply with the rule or regulation adopted by the board of education of said village on Novernber 23d. 1903, which provided: “That no child shall be admitted to the Barberton public schools after December 1st, 1903, not having a physician’s certificate showing successful vaccination, or a physician’s certificate excusing said child ther.efrom, such excuse to be approved by ‘the board-of education.” In the present case, therefore, the sole question presented is, was this rule or regulation one which under the constitution and laws-of the state of Ohio, the board of education had the power to adopt and enforce. By Section 3986, Revised Statutes, it is -provided, as to boards of education, that: “The board of each district may make and enforce such rules and regulations to secure the vaccination of, and to prevent the spread of smallpox among the pupils attending or eligible to attend the schools of the district, as in its *302 opinion the safety and interest of the public require; and the boards of health and councils oil municipal corporations, and the trustees of townships, shall, on application of the board of education of the district, provide at the public expense, without delay, the means of vaccination to such pupils as are not provided therewith by their parents or guardians.” It was in pursuance of the power which it claimed was conferred upon it by this statute that the board of education of the village of Barberton adopted the rule in question; and it would seem to follow, that if this statute is a valid enactment the rule adopted by the board under favor of its provisions, if not an unreasonable exercise of the power conferred, is equally valid, and may be enforced. The question here, is not one of the right to enforce compulsory vaccination under legislative authority, but whether the legislature in the proper exercise of the police power which is inherent in every sovereign state, may rightfully confer upon boards of education having control of the public schools authority to exclude therefrom, as a precautionary measure, all children who have not been successfully vaccinated, or who do not furnish a physician’s certificate excusing them from vaccination. While it is perhaps almost impossible to frame a definition of the police power, which shall accurately indicate its precise. limits, so far as we are aware, all courts that have considered the subject have recognized and sanctioned the doctrine that under the police power there is general legislative authority to pass such laws as it is believed will promote the common good, or will protect and preserve the public health. And -the power to determine what *303 laws are necessary to promote or secure these objects, rests primarily with the general assembly, subject to the power of the courts to decide, whether a particular enactment is adapted to that end. . Vaccination, while made compulsory in but few- of the states, is countenanced and promoted by legislation in nearly all of them. And statutes substantially the same as the one now under consideration, authorizing boards of education, or the local school authorities, to require vaccination as a prerequisite to attendance upon fhe- public schools, have been almost uniformly upheld and sustained by the courts, as a reasonable and proper exercise of the police power. Abeel et al. v. Clark, 84 Cal., 226; Commonwealth v. Pear, 183 Mass., 242; Hutchins v. Durham, 137 N. C., 68; Blue v. Beach et al., 155 Ind., 121; In the Matter of August Rebenack, 62 Mo. App., 8; Duffield v. Williamsport School District, 162 Pa. St., 476; Field v. Robinson, 198 Pa. St., 638; Tiedeman, State and Federal Control of Persons and Property, Vol. 1, Sec. 17; Parker & Worthington’s Public Health and Safety, Sec. 123. Legislation requiring vaccination is mentioned by Mr. Justice Brown, in delivering the opinion of the court in Lawton v. Steele, 152 U. S., 133, 136, as a proper exercise of the police power. While the duty of providing for the education of the children of the state by the support and maintenance of an efficient system of common schools, is one enjoined by the Constitution of Ohio, Article I, Section 7, and Article VI, Section 2, yet it must be conceded' that the privilege of attendance upon the public schools of the state is, and of necessity must be, subject to such reasonable restrictions and limita *304 lions as may be imposed by the' proper authorities, either in the interest of the public health, or to promote the efficiency and general welfare of the schools themselves. ■ In Bissel v. Davidson et al., 65 Conn., 183, a statute authorizing the school authorities to require vaccination as a condition precedent to the right to attend -the public schools was held to be a valid enactment, and in discussing the question of the right or privilége of all ■children of school age to attend the public schools, the court in that case said: “This privilege is granted and is to be enjoyed upon such terms and under such reasonable conditions and restrictions as the law-making power, within . constitutional limits, may see fit to impose; and, within those limits., the question what terms, conditions and restrictions will best subserve the end sought in the establishment and maintenance of public schools, is a" question solely for the legislature and not for the courts. The statute in question .authorizes the committee to impose vaccination' as ■one of those conditions. It does not authorize or compel compulsory vaccination; it simply requires •vaccination as one of the conditions of the privilege of attending the public school. Its object is to promote the usefulness and efficiency of the schools by caring for the health of the scholars. * * * The statute is essentially a police regulation, as much só as would be one giving the power to exclude temporarily scholars afflicted with infectious or contagious diseases, or coming from homes or districts where such diseases were ■prevalent.” In re Rebenack, 62 Mo. App., above cited, a resolution passed by the school authorities of the city of St. Louis, very similar to the *305 one now under consideration in the present case, was held to be reasonable and valid, the court saying: “In the nature of things, it must rest with the boards of education to determine what regulations are needful for a safe and proper management of the schools, and for the physical and moral, health of the pupils entrusted to their care. If such regulations are not oppressive or arbitrary the courts can not, or should not interfere.” To the same effect is State, ex rel., v. Zimmerman et al., 86 Minn., 353, where it is .said: “The welfare of .the many is superior to that of the few, and as regulations compelling vaccination are intended and enforced solely for the public good, the rights conferred thereby are primary and. "superior to the rights of any pupil to attend the public schools.” In the cas.e at bar the point is made, by counsel for plaintiff in error, that inasmuch as the circuit court found the fact to be, — “that the disease of Smallpox is not prevalent at the present time in said village of Barberton, nor in said school district, nor in the community where relator and his said children reside, and at the pres-' ent time there is-no threatened epidemic of smallpox, nor has there been a threatened epidemic of smallpox since said 22d day of January, 1904,- and that there is no evidence tending to- show that the children of the relator have been exposed to smallpox,” that, therefore, the resolution of November 23d, 1903, adopted by the board of education of the village of Barberton can not, under such conditions, now properly be enforced. The claim being, that a rule or regulation requiring vaccination' as a prerequisite to the right to attend the public schools becomes and is unreason.--’ *306 able, and can not be enforced, at a time when smallpox does not exis.t in the community, and there is no present reasonable ground to apprehend its appearance. Such claim necessarily assumes that the power conferred upon boards of education by Section. 3986, Revised Statutes, can not rightfully be exercised by them unless at the time of its exercise smallpox actually exists in the community, or an epidemic of the disease is then reasonably to be apprehended. But the statute conferring the power, has imposed no such con-' dition or limitation upon its exercise, and we know of no reason or authority from which such condition may be implied. It is matter of universal knowledge, that' with our present rapid means of intercommunication, smallpox is liable to make its appearance at any moment . in any community. If then, as is the common belief, vaccination is a preventive, or a protection against, this dread disease, which Macauley denominated “the most terrible of all ministers of death,” certainly it may not be said, that for a board of education to adopt, as a protective and precautionary measure, a rule or regulation requiring vaccination as a prerequisite to the right to attend public schools, is an unwarranted or unreasonable exercise of the power expressly conferred upon it by statute, even though smallpox does not at the time actually exist in the district or community, for it may truly be said that, “An ounce of prevention is worth a pound of cure.” In a comparatively recent case decided by the court of appeals of New York,. October 18th, 1904, that court says: “It must be conceded that some laymen, both learned and unlearned, and some physicians of great skill and *307 repute, do not believe that vaccination is a preventive of smallpox. The common belief, however, is that it has' a decided tendency to prevent the spread of this fearful disease and to render it less dangerous to those who contract it. While not accepted by all, it is accepted by the mass of the people as well as by most members of the medical profession. * * * The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone. The possibility that the belief may be wrong and that science may yet show it to be wrong is not conclusive, for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. In a free country, where the government is by the people through their chosen representatives, practical legislation admits of no other standard of action, for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of the constitution and would sanction measures opposed to a republican form of government. While we do not decide and can not decide that vaccination is a preventive of smallpox, we take judicial notice of the fact that this, is the common belief of the people of the state, and with this fact as a foundation, we hold that the statute in question is a health law, enacted in a reasonable and proper exercise of the police power. It operates impartially upon all children in the public schools and is designed not only for their protection but for the protection of all the people of the state. The relators son *308 is excluded from school only until he complies with the law passed to protect the health of all, himself and his family included. No right conferred or secured by the constitution was violated by that law or by the action of the school authorities based thereon.” In the matter of the application of Edmund C. Viemeister for a Peremptory Writ of Mandamus v. Patrick I. White, as President of the Board of Education, etc., et al., 179 N. Y., 235. A careful examination of the authorities cited by counsel for plaintiff in error leads to the conclusion that under the facts, respectively found in those cases, with possibly one exception, they are not in substantial conflict with the cases above cited, or at war with the conclusion reached by us in this case. In fact, there is much asserted in the cases cited by counsel for plaintiff in error that is in entire harmony with our holding in the present case. Our conclusion- in this case is in accord with the conclusion reached by the circuit court, and the judgment of that court is therefore

Affirmed.

Shauck, C. J., Price, Spear and Davis, JJ., concur.