### City of New Braunfels et al. v. Fritz Waldschmidt et al.

#### No. 3081.  Decided December 11, 1918.

**1.—Constitutional Law—Personal Liberty—Public Health—Vaccination.**

The personal liberty guaranteed by the Federal and State Constitution is not invaded by public regulations in the interest of health enforcing vaccination of school children.   (Pp. 306, 307.)

**2.—Same—Property Rights.**

A governmental regulation requiring vaccination of children of scholastic age as a condition of their admission to the public schools is not an invasion of property rights of such children or of the taxpaying parent denying them due process of law or equal protection of the law.   Admission to public schools is rather a privilege than a strict right; and if considered as a property right is subject to regulation by the police power of the State in the interest of public health.   (Pp. 307, 308.)

**3.—Same—Religious Conviction—Christian Science.**

The rights of conscience in the matter of religious belief protected by the Federal and State Constitutions are subject to the police power of the State and obedience to reasonable health regulations adopted by it.   (Pp. 308, 309.)

**4.—Police Power—Delegation of Authority.**

The police power of the State may be delegated to municipalities for appropriate purposes, such as regulation of public health; and the power to enact an ordinance requiring vaccination of school children was so delegated to the city council of New Braunfels by article 858, Rev. Stats., authorizing all acts and regulations "necessary or expedient for the promotion of health or the suppression of disease."   Such general delegation of the power is sufficient.   (Pp. 309, 310.)

**5.—Public Health—Reasonableness of Regulation.**

Much must be left to the discretion of a city council charged with general power to protect public health, in determining the measures to be adopted. The unreasonableness or want of necessity for the method selected must be clear, before a court would be warranted in setting it aside as unreasonable.   (P. 310.)

**6.—Same.**

Under circumstances here shown the appellate court was not justified in declaring unreasonable and invalid an ordinance by the city council of New Braunfels requiring vaccination of children attending its public schools.   (P. 310.)

**7.—Opinion Limited.**

The rulings herein are not to be taken as extending to requirements of compulsory vaccination; but merely to the right of the city council to exclude from the public schools children not complying with its regulations on that subject.   (P. 311.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Comal County.

Waldschmidt, for himself and as next friend for his minor children, sued the City of New Braunfels, its mayor and officers, and its superintendent of schools, to obtain an injunction against excluding the children from the public schools for refusal to comply with a requirement of the city council that they should first be vaccinated.   He was denied recovery, and on his appeal this was reversed and the injunction awarded. The appellees thereupon obtained writ of error from the Supreme Court.

*Henne & Fuchs* and *J. R. Fuchs,* for plaintiffs in error.—The uncontroverted facts in this case showed that conditions in New Braunfels with reference to smallpox were such at the time of the trial as to constitute a menace to public health, and it was error for the Court of Civil Appeals not to make a finding on this question. Zucht v. San Antonio School Board, 170 S. W., 840.

The question of whether or not conditions exist in a municipality necessitating the passage and enforcement of a vaccination ordinance is primarily for the local municipal authorities, and such a finding will not be disturbed, unless the want of necessity is "clear, manifest and undoubted." Zucht v. City of San Antonio, 170 S. W., 840; Railway Co. v. City of Dallas, 98 Texas, 417.

The vaccination ordinance in question was a necessary or expedient regulation for the promotion of health or the suppression of disease. Art. 838, Rev. Stats., 1911; Acts of 1911, p. 173, rule 28, 31; Zucht v. San Antonio School Board, 170 S. W., 840; McSween v. Board of School Trustees, 129 S. W., 206; Cyc., vols. 35, p. 1117, 8, p. 1061, 28, p. 396, sec. e, 709, 710, 21, p. 393, sec. b; 22 Am. and Engl. Ency., 2nd ed., pp. 937, 922-923, 20 Id., 1139-1147, 21 Id., pp. 989, sec. d, 978, 25 Id., pp. 23, 24; Blue v. Beach, 155 Ind., 121, 50 L. R. A., 70; Morris v. Columbus, 42 L. R. A., 180; Glover v. Board of Education, 14 S. D., 139, 84 N. W., 761; Mathews v. Board, 54 L. R. A., 736; State v. Board, 21 Utah, 401; Hill v. Bickers, 188 S. W., 766; In re Rebenack, 62 Mo. App., 8; Bissell v. Davison, 29 L. R. A., 251; Field v. Robinson, 198 Pa. St., 638, 49 Atl., 873.

The question of whether or not local conditions exist necessitating the passage and enforcement of a vaccination ordinance is one for the local authorities and can not be reviewed by any court unless such discretion has been clearly abused. Austin v. Cemetery Assn., 87 Texas, 330; City of Brenham v. Holle & Seelhorst, 153 S. W., 348; Zucht v. Board of Trustees, 170 S. W., 842; Blue v. Beach, 155 Ind., 121, 50 L. R. A., 67.

The ordinance in question was under article 980, Revised Statutes of 1911, an expedient regulation "for the preservation of health and the suppression of disease in the city." Authorities previously cited.

The ordinance in question was such a police regulation as contemplated by articles 764 and 817 of Revised Statutes of 1911. Art. 764, Rev. Stats., 1911; art. 817, Rev. Stats., 1911. Also the authorities previously cited.

The ordinance in question being a police regulation is not in conflict with the compulsory education law. General Laws, 1915, pp. 92-98, sec. 4, Exemptions; McSween v. School Board, 129 S. W., 206; Zucht v. San Antonio School Board, 170 S. W., 840; 25 Am. & Eng. Ency. (2nd ed.), p. 23, note 3; 21 Cyc., 393, note 85; Blue v. Beach, 50 L. R. A., 70.

Failure to attend school in compliance with the ordinance in question would fall within the exemption provided in the compulsory education

law by section 4, providing that quarantine and unusual causes acceptable to the teacher, constitute excuses for absence.    Same authorities.

*Adolph Seidemann,* for defendant in error.—On question of "implied powers" of corporations.    Ball v. Texarkana Water Corporation, 127 S. W., 1068; Mantel v. State, 117 S. W., 856; State v. Country Club, 173 S. W., 571; Dibrell v. City of Coleman, 172 S. W., 550.

City can pass no ordinance which would destroy vested rights.    Texarkana Gas & Elec. Co. v. City of Texarkana, 123 S. W., 215.

City can make no contract not authorized by its charter.    City of Paris v. Sturgeon, 110 S. W., 459.

City can not lawfully pass an ordinance which is unreasonable, arbitrary and oppressive.    Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas, 417, 84 S. W., 648; Zucht v. City of San Antonio, 170 S. W., 840.

Board of trustees of independent school district has the management and control of the schools and property belonging to the schools, and trustees may bring suit against the county to enjoin the county from maintaining pest house in such close proximity to school as might endanger the health of the pupils.    Thompson v. Kimbrough, 57 S. W., 328; compulsory education, 34th Leg., p. 92.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

By this suit defendants in error attack the validity of an ordinance adopted by the city council of the City of New Braunfels, providing that no person should be permitted to attend the public or private schools within that city, without presenting a physician's certificate to the person's vaccination within six years, and providing for the punishment, by fine, of anyone upon conviction of sending a child to any school within the city, who had not been vaccinated or upon conviction of admitting a child into such school without a certificate of vaccination.

The ordinance is attacked on three grounds, viz:

First.    That the ordinance deprives defendants in error of liberty and property, without due process or due course of law, and hence violates the Fourteenth Amendment to the Constitution of the United States and section 19 of article 1 of the Constitution of Texas.

Second.    That the ordinance abridges or interferes with the rights of defendants in error in matters of religion and hence violates section 6 of article 1 of the Constitution of Texas.

Third.    That the ordinance is void because the City of New Braunfels was without lawful authority to enact same.

There is no substantial dispute over the material facts which may be summarized as follows:

(1)  The ordinance was adopted on September 18, 1916, and New Braunfels then and since was a municipal corporation of some 4500 inhabitants, possessing all the powers conferred by title 22, of chapter 1, of the Revised Statutes of Texas of 1911.

(2)   The percentage of Mexicans in the population of New Braun-

fels is about thirty. New Braunfels is directly connected by rail and highway with San Antonio, twenty-eight miles distant, and with San Marcos, eighteen miles distant. San Antonio has a large Mexican population and a number of Mexicans pass from San Antonio to New Braunfels each day.

(3) There are cases of smallpox, chiefly among the Mexicans, in San Antonio, practically throughout the year. In the fall of 1916, smallpox was prevalent in epidemic form in New Braunfels, San Marcos and San Antonio. Thirty-two cases of smallpox were reported to the city health officer, within New Braunfels, during this epidemic, and there were six deaths. The epidemic started in the negro and Mexican quarter of the town and then extended to the white people, until about as many of them were afflicted as of the negroes and Mexicans. The highest number of cases in New Braunfels at one time was fifteen or sixteen. Once during the epidemic the cases were reduced to one single case, and the health officer believed he would be able to prevent the further spread of the disease. However, a Mexican case was concealed, and other cases developed until their number again rose to fifteen or more. It is the custom of Mexicans to conceal smallpox among their people, and the lack of sanitation in their surroundings is favorable to its spread. On September 18, 1916, when the ordinance was enacted, the epidemic of smallpox prevailed, and, on account thereof, the public schools were closed from that date until about October 20, 1916. There were several cases of smallpox in San Marcos when the schools were reopened

(4) Smallpox is a very contagious and dangerous disease. It may be disseminated by those not afflicted as well as by those stricken. Younger people are the most susceptible to the contagion. The medical profession generally recognize vaccination as a preventative of smallpox. There was no case out of the thirty-two in New Braunfels in 1916 who had been vaccinated within or for a reasonable time. One man had it who had been vaccinated forty years previously and hence was no longer protected thereby. Two or three patients were vaccinated, after they had been exposed, but too late to protect them. Physicians and nurses, after proper vaccination, expose themselves to the contagion without contracting smallpox.

(5) When the case was tried, on November 16, 1916, there was one case of smallpox in New Braunfels, and the only physician who testified gave it as his opinion that there was danger at that time of the spread of the disease. In support of the opinion, he stated that in winter the Mexican population in New Braunfels increased, when they gathered together in unventilated little huts, and the disease was most likely to originate among them and spread to all the people. While no public school pupil was stricken during the 1916 epidemic, smallpox appeared in two white families with public school children, who did not then attend school.

(6) On October 20, 1916, defendant in error, Fritz Waldschmidt,

sent his daughter Else to the public schools of the City of New Braun-
fels, which is an independent school district, having its own trustees,
and levying a school tax, and these trustees had resolved, on September
5, 1916, not to require all pupils to be vaccinated. Else Waldschmidt
was denied admittance to the schools, on October 20, 1916, because of
her failure to present a certificate of vaccination as required by the
ordinance.

(7)    This suit is brought by Else Waldschmidt and her brother, Sido
Waldschmidt, both being of scholastic age and in good health, as well
as by their father, all residing in New Braunfels, to enjoin the city
and its officers from excluding Else and Sido from the public schools.
Else and Sido and their father are Christian Scientists and do not be-
lieve in vaccination, but conscientiously believe in the Christian Science
treatment of smallpox, which is "a denial of the reality of sickness and
disease."

On the foregoing facts the trial court entered judgment refusing the
injunction sought by defendants in error.

The Court of Civil Appeals reversed the judgment, made the specific
findings, among others, that smallpox did not exist in epidemic form
in New Braunfels at the time of the trial, and that there was no
reasonable ground for fearing that such an epidemic was threatened,
and rendered judgment for defendants in error enjoining plaintiffs in
error from excluding the two Waldschmidt children from the public
schools. 193 S. W., 1077 to 1082.

The contention that this ordinance is inconsistent with the liberty
guaranteed by the Federal and State Constitutions has been too com-
pletely repelled by the opinion of the Supreme Court of the United
States in Jacobson v. Massachusetts, 197 U. S., 22, to justify further
discussion. In upholding an outright compulsory vaccination statute
of the State of Massachusetts, the court, through Justice Harlan, said:
"The defendant insists that his liberty is invaded when the State sub-
jects him to fine or imprisonment for neglecting or refusing to submit
to vaccination; that a compulsory vaccination law is unreasonable, arbi-
trary and oppressive, and, therefore, hostile to the inherent right of
every freeman to care for his own body and health in such way as to
him seems best; and that the execution of such a law against one who
objects to vaccination, no matter for what reason, is nothing short of
an assault upon his person. But the liberty secured by the Constitution
of the United States to every person within its jurisdiction does not
import an absolute right in each person to be, at all times and in all
circumstances, wholly freed from restraint. There are manifold re-
straints to which every person is necessarily subject for the common
good. On any other basis organized society could not exist with safety
to its members. Society based on the rule that each one is a law unto
himself would soon be confronted with disorder and anarchy. Real
liberty for all could not exist under the operation of a principle which
recognizes the right of each individual person to use his own whether

in respect of his person or his property, regardless of the injury that may be done to others. . . . In Crowley v. Christensen, 137 U. S., 86, 89, we said: 'The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law.' . . . The liberty secured by the Fourteenth Amendment, this court has said, consists, in part, in the right of a person 'to live and work where he will,' Allgeyer v. Louisiana, 165 U. S., 578; and yet he may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country and risk the chance of being shot down in its defense. It is not, therefore, true that the power of the public to guard itself against imminent danger depends · in every case involving the control of one's body upon his willingness to submit to reasonable regulations established by the constituted authorities, under the sanction of the State, for the purpose of protecting the public collectively against such danger." 197 U. S., 26 to 30.

The minor defendants in error claim that they have property rights · in State and local school funds, of which they would be deprived, without due process of law, by the enforcement of the ordinance. And their father claims that his property rights would also be divested, without due course of law, he being a property owner and payer of school taxes in the New Braunfels independent school district. · Connecticut ·has a common school system, and when a ·school committee in that State exercised the authority conferred by statute to require every child to be vaccinated before being permitted to attend school, · the requirement was resisted upon the ground that it deprived a child of scholastic age, who refused to be vaccinated, of his rights without due process of law. In holding the child bound to submit to vaccination, as a condition of attending the schools, it was said: "The duty of providing for the education of the children within its limits, through the support and maintenance of public schools, has always been regarded in this State in the light of a governmental duty resting upon the sovereign State. It is a duty not imposed by constitutional provision, but has always been assumed by the State; not only because the education of youth is a matter of great public utility, but also, and chiefly, because it is one of great public necessity for the protection and welfare of the State itself. In the performance of this duty, the State maintains and supports, at great expense, and with an ever watchful solicitude, public schools throughout its territory, and secures to its youth the privilege of attendance therein. This is a privilege or advantage, rather than a right, in the strict technical sense of the term. This privilege is granted,

and is to be enjoyed, upon such terms and under such reasonable conditions and restrictions as the law-making power, within constitutional limits, may see fit to impose; and, within those limits, the question, what terms, conditions, and restrictions will best subserve the end sought in the establishment and maintenance of public schools, is a question solely for the Legislature, and not for the courts. The statute in question authorizes the committee to impose vaccination as one of those conditions. It does not authorize or compel compulsory vaccination. It simply requires vaccination as one of the conditions of the privilege of attending the public school. Its object is to promote the usefulness and efficiency of the schools by caring for the health of the scholars. . . . The statute is essentially a police regulation,—as much so as would be one giving the power to exclude temporarily scholars afflicted with infectious or contagious diseases, or coming from homes or districts where such diseases were prevalent. . . . It may operate to exclude his son from school, but, if so, it will be because of his failure to comply with what the Legislature regards, wisely or unwisely, as a reasonable requirement, enacted in good faith to promote the public welfare. Nor, in any proper sense, can the statute be said to deprive the plaintiff of any right, without due process of law, or to deny to him the equal protection of the law." Bissell v. Davison, 65 Conn., 183, 29 L. R. A., 253, 254. That portion of the quoted language dealing with the duty of the State and the benefits extended in the performance of that duty seems just as applicable to Texas as to Connecticut, and the duty is enjoined on Texas, both by the Constitution and by statute.

However, if defendants in error, or any of them had a right with respect to the children's school attendance, which could properly be considered a property right, the same was held subject to a valid exercise of the police power of the State. McSween v. Board of School Trustees, 129 S. W., 208. Halsell v. Ferguson, 202 S. W., 321. "For it is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community; that this power can never be abdicated nor bargained away and is inalienable even by express grant, and that all contract and property rights are held subject to its fair exercise." Atlantic C. L. R. Co. v. Goldsboro, 232 U. S., 549.

The ordinance does not in any way undertake to control or interfere with any rights of conscience in matters of religion. As pointed out in Chief Justice Waite's opinion in Reynolds v. United States, 98 U. S. 161, the religious freedom, guaranteed by the United States Constitution, does not deprive Congress of legislative power, whereby actions may be reached which violate social duties. No more does section 6 of the Bill of Rights in our State Constitution relieve one from obedience to reasonable health regulations, enacted under the police power

of the State, because such regulations happen not to conform to one's religious belief. "To permit this would be to make the professed doctrines of religious belief superior to the law of the land and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances." 98 U. S., 166, 167.

No one would question that the police power of the State may be delegated for appropriate purposes to the various municipalities, and that it may be validly exercised by such municipalities for the protection of the health of their residents. "Health being the *sine qua non* of all personal enjoyment, it is not only the right but the duty of a State or a municipality possessing the police power to pass such laws or ordinances as may be necessary for the preservation of the health of the people." 12 C. J., 913.

But it is contended, and was determined by the Court of Civil Appeals, that no power had been granted a municipal corporation, incorporated like New Braunfels, to adopt such an ordinance as that in question.

Article 838, Revised Statutes, expressly conferred on the city council of New Braunfels the power "to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease," and, in our opinion, this ordinance is no more than a regulation, deemed necessary and expedient by said city council, to suppress the disease of smallpox in New Braunfels, and to promote the health of all the people of the city, and hence plainly within the scope of the power granted to the council.

This court refused a writ of error in the case of Zucht v. San Antonio School Board, 170 S. W., 840, wherein it was held that a provision of a special Act of the Legislature authorizing the San Antonio school board to make reasonable rules and regulations "for the protection of the health and safety of those attending such schools and to enforce such rules and regulations," conferred the power on the school board to make and enforce a rule and regulation refusing admission to the city public schools of any pupil or teacher not presenting a physician's certificate, showing successful vaccination within seven years, with certain provisos which are not material here. It could not consistently be held that such an ordinance was authorized by the grant of power to protect the health of those attending schools and was unauthorized by a grant of power to both promote such health and suppress disease.

In McSween v. Board of School Trustees, 129 S. W., 206, it was held that the very general power granted an independent school board to manage, control and govern the public schools and to adopt such rules and regulations to that end as might be deemed proper, was sufficient to authorize the passage of a regulation for the vaccination of school children.

In upholding a regulation prescribed by a board of health, requiring children to be vaccinated as a condition to their admission to a public school, under a statute providing that the board should "have and exer-

·cise all the power necessary for the preservation of the public health," and "to make such rules and regulations as may be deemed necessary for the health and safety of the inhabitants," the Supreme Court of Minnesota said: "A broad and comprehensive delegation of power to do all acts and make all regulations for the preservation of the public health as are deemed expedient confers, by fair implication, at least, the power sought to be exercised in this case.   In the case of In re Rebenack, 62 Mo App., 8, a legislative grant of power to a school board "to make all rules, ordinances, and statutes proper for the government and management of such schools" was held sufficient authority for a regulation requiring children to be vaccinated, as a condition to their right to· attend school.   A general grant of power to do all acts necessary for the preservation of the public health and welfare was held to authorize a similar regulation in Indiana.  Blue v. Beach, 155 Ind., 121, 127, 56 N. E., 89.   The same conclusion was reached in Hazen v. Strong, 2 Vt., 427, and in Duffield v. Williamsport, 162 Pa. St., 476, 29 Atl., 742."   State v. Zimmerman, 86 Minn., 358.

We can not assent to the proposition that with smallpox still in New Braunfels, and in other nearby communities with which commercial and social intercourse was continuous, the trial court would have been warranted in declaring the ordinance unreasonable, having for its object to protect as far as practicable, by means of vaccination, the health and lives of the children and all the people of that community.   As declared in Blue v. Beach, 155 Ind., 136:  "It is a well recognized fact that our public schools in the past have been the means of spreading contagious diseases throughout an entire community.   They have been the source from which diphtheria, scarlet fever, and other contagious diseases have carried distress and death into many families.   Surely there can be no substantial argument advanced adverse to the reasonableness of a rule or order of health officials which is intended and calculated to protect, in a time of danger, all school children, and the families of which they form a part, from smallpox or other infectious diseases."

Enough has ·been said to show that the rule laid down in Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas, 417, 418, precludes our sustaining the decision of the Court of Civil Appeals that this ordinance is invalid as lacking in reasonableness or want of necessity.   This court announced in that case:  "As was said by the Supreme Court of Minnesota, in the Evison case, supra:  'Much must be left to the judgment and discretion of the city council, and when they have exercised their judgment and discretion in passing an ordinance it is prima facie valid, and, to justify a court in setting aside their action, its unreasonableness, and the want of necessity for it as a measure for the protection of life and property, must be clear, manifest and undoubted, so as to amount, not to a fair exercise, but an abuse of discretion, or a mere arbitrary exercise of the power of the council.' "   Evison v. Railway Co., 11 Law Rep. Ann., 436.

There is no conflict between this ordinance and our law for compulsory education. For that law expressly exempts from its requirements "any child whose bodily . . . condition is such as to render attendance inadvisable." Certainly an unvaccinated child would come within that classification when those charged with the duty to protect the public health in his community had declared that before he could be considered bodily fit to attend the school he must be vaccinated.

The effect of our conclusions is not to impose compulsory vaccination on the minor defendants in error nor to subject their parent to prosecution if he withdraws them from school, because of his opposition to vaccination. It is simply to deny these minors the privileges of the schools until they comply with the ordinance passed for their own protection and for the protection of their families, along with all others residing in the community, as has been pointed out by the New York Court of Appeals. Viemeister v. White, 179 N. Y., 235, 1 Ann. Cas., 334.

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*