## MOSELEY et al. v. CITY OF DALLAS et al.
### (No. 1075—4716.)

Commission of Appeals of Texas.   Section A.
May 29, 1929.

Wm. H. Clark, Wm. H. Clark, Jr., Tom C. Clark, and Clark & Clark, all of Dallas, for plaintiffs in error.

James J. Collins, City Atty., Hugh S. Grady, W. Hughes Knight, and H. P. Kucera, Asst.

City Attys., all of Dallas, and Black & Graves, of Austin, for defendants in error.

CRITZ, J. This case was originally filed in the district court of Dallas county, Tex., by Fred T. Moseley, et al., plaintiffs in error, against the city of Dallas, the board of education of the city of Dallas, R. B. Tompkins, auditor of said city, and Percy Davis, treasurer, defendants in error. The plaintiffs in error sued as taxpayers and prayed for an injunction against the defendants in error restraining them from maintaining and operating an alleged health department then being operated and conducted by said board of education in the public free schools of said city, and the expenses thereof paid out of the school funds of said city.

The pleadings of the plaintiff in error are very voluminous, but they in substance allege that the said health department is being maintained in the public free schools of said city without lawful authority, and by the illegal expenditure of large sums of money thus diverted from the legitimate purpose for which it was collected in taxes for the support of the public free schools of the city of Dallas. The plaintiffs further allege that the maintenance of said health department in the public free schools of said city is in contravention of and contrary to the Constitution and laws of this state, and the charter of said city.

The defendants in error answered by verified pleadings, setting up substantially the following:

A plea to the jurisdiction of the court because it affirmatively appeared from the petition that as a matter of law the plaintiffs had failed or refused to pursue or exhaust the remedies required by law governing appeals to the state superintendent and the state board of education before the filing of the plaintiffs' suit. Subject to such plea the defendants filed a general demurrer and several special exceptions, all of which, including the said plea to the jurisdiction, were overruled.

The defendants in error further specially pleaded as follows:

That the city of Dallas is a municipality consisting of about 275,000 inhabitants. That the city constitutes an independent school district and is under the control of the board of education of the state and the superintendent of public instruction of the state and the local board of education. That the board of education, has under its control 51 public schools. That the schools furnish educational facilities for many thousand students coming from all classes and walks of life. That more than 40,000 students attend the public schools of the city per day. That in addition to the ordinary subjects such as reading, writing, and history, etc., the board of education has deemed it expedient to include in the curriculum of the public school system of the city instructions in physical culture and

health. That in pursuance of this purpose the board of education established and is maintaining a health department in the schools of the city. That the board of education has employed competent and efficient doctors and nurses and has prescribed a set of rules and regulations for the conduct of the said health department, a copy of which rules and regulations are attached to the said answer. That by virtue of the said rules periodical examinations of children are made in the schools, and an accurate and correct record of such examinations is kept and furnished to the parents of the children examined. That such doctors and nurses, by lectures and other proper means, instruct the students in matters of health. That no examination is made of any child whose parents object thereto, nor are any of the records of examinations made public. That the doctors and nurses engaged only in health instruction, and at no time do they undertake to treat students save and except in cases of emergencies occurring at the school at which the said doctors or nurses may happen to be. In the examinations given, boys and girls are examined separately and apart, the boys being examined by a man doctor and the girls by a woman doctor. At all times the parents of the children examined are invited to be present.

That in conducting the health educational work the board of education and the health department do not infringe upon the health authorities of the state nor conflict with the work of the health authorities, but the health inspection work of the schools is conducted in harmony with the health authorities.

That the exercise of the discretion reposed in the board is lawful and is a sound exercise of the discretion required to maintain an efficient system of public schools of the city. That the object of modern public educational work is to develop the pupils of the public schools mentally and physically, and that the said work can be carried on only by ascertaining the physical condition of the students. That the experience of school authorities of the city has demonstrated that children who are not sound in health are not in such condition as to be susceptible to proper education. That many children who have been thought to be stupid have been merely suffering from some physical disability. That the health educational work has prevented such physical disabilities. That the physical condition of students bears a distinct and marked relation to the classification of the students for general educational work. That those pupils who are physically defective are unable to learn readily, and as a result are a drag upon their classes and require an undue amount of attention upon the part of the teachers and are required to go over or repeat their classes or courses of study, thereby increasing the cost and expense of operating the schools of the city. That by the adoption of the physi-

cal examinations a great saving is made in the operation and conduct of the schools.

That the health instruction work provided by the board of education of the city of Dallas is similarly conducted in the public school systems of the state of Texas as well as in the United States. This work is being conducted and maintained in the public schools of Fort Worth, San Antonio, Houston, Galveston, Beaumont, and more than 300 other cities and towns throughout the United States. That various commissioners' courts throughout the state employ trained nurses to visit rural schools in Texas for the purpose of engaging in the same kind of health educational work and physical examinations. That the experience of the city of Dallas shows that out of 12,356 students examined by the health department up to March 20, 1926, 11,908, constituting 96.4 per cent., have been found with physical defects and in need of health instruction.

After hearing the evidence and pleadings of both parties, including the plea to the jurisdiction of the court, the trial court granted a temporary restraining order restraining the members of the board of education from maintaining a staff of physicians, dentists, and trained nurses out of the public free school fund of the city of Dallas for the purpose of conducting said health work in said schools, and also restraining the paying out of any money in connection therewith. The injunction was further granted upon the condition that the defendants in error execute a bond in the sum of $2,500 payable to the plaintiffs in error, conditioned that defendants in error will pay all costs of this appeal and any other damage that may result to the plaintiffs in error in case the temporary restraining order is dissolved. The order further provided that the temporary restraining order be suspended and held inoperative during the pendency of the appeal, and that the health work in said schools may continue in the same manner to abide the result of the appeal.

Defendants in error, the city of Dallas et al., duly appealed from this temporary restraining order to the Court of Civil Appeals for the Fifth District at Dallas, which court reversed the judgment of the district court, and rendered judgment for the defendants in error. city of Dallas et al., 286 S. W. 497. The case is now before this court on writ of error granted on application of Fred T. Moseley et al., plaintiffs in error in this court, and plaintiffs in the district court.

The Court of Civil Appeals in their findings of fact sustain all the above allegations of the answer of defendants, and find facts in conformity therewith, and said court further finds:

"After a careful investigation of the working of health departments in other cities by the school authorities of the city of Dallas, and believing that the efficiency of the city's free schools would thereby be increased, the board of education, by resolution duly adopted, established this department, and it was in force for the school year 1925–26. An appropriation of $30,000, or so much thereof as necessary, was duly made from the funds derived from the special taxes levied by the city of Dallas for maintaining its public schools, for the establishment and maintenance of said health department. A competent physician was employed as superintendent of this department at a salary of $4000 per year, and such physician is required to devote his entire time to this work. A competent woman physician was employed as assistant superintendent at a salary of $2500 per year. and she is required to devote her entire time to the work. Six women nurses were employed for the school year of nine months, each at a salary of $125 per month. During a portion of the year a dentist was employed at a salary of $2000; such dentist, however, was not in said department at the time of the filing of this suit, and is not now connected therewith, but it is assumed that a competent dentist will be employed in the future.

"The school board adopted certain rules to be observed by those in charge of this department and under which the work of the department is to be done. These rules are as follows:

" '(1) Neither the director of school health work nor any employé of the school health department shall forbid children entrance to or attendance at any school. In case any child is suspected of having an infectious disease, the city health officer shall be notified, and in the meantime, unless other instructions are received from that officer, the child shall have the option of the following: (a) returning home, (b) going to the office of the city health department, or (c) remaining at school in isolation until the arrival of the city health officer or the close of the school day.

" '(2) The director of school health work and his assistants shall from time to time make physical examinations of all children in the public schools except those whose parents or guardians object thereto and except those who have been physically examined during the school year in connection with the R. O. T. C. or other school activities.

" '(3) All physical examinations of girls, other than eye, ear, nose, throat, oral and similar minor examinations, shall be made only by women physicians in the presence of at least one other woman.

" '(4) Parents and guardians, who desire that their children shall not be examined, may notify in writing the principal of the school attended by their child of their objection, and such child shall not be examined.

" '(5) Parents and guardians shall have the right to be present at any examination of their child, and, upon written request made to the principal of the school attended by their child, they shall be notified of the time

and place at which such child shall be examined.

" '(6) A careful written record of each examination, together with the recommendation, if any, of the examining physician in regard to the necessity and character of corrective measures desirable, shall be made and preserved at the school attended by the child, and such record shall be open to inspection by the parents or guardians of the child at any reasonable time. In case the examining physician deems it desirable, he may make to .the parents or guardians a special report of the child's physical condition and his recommendations in regard thereto.

" '(7) Except in cases of emergencies requiring first aid measures, no treatment shall ever be given. Parents or guardians, who desire to follow the directions of the director of school health work, shall employ physicians of their own selection or shall make use of one of the free clinics available in the city.

" '(8) No school physician or other employé of the school health department shall accept any professional employment from any patron of the schools or receive any character of compensation from a patron for professional services rendered to any child.

" '(9) At the time of making examinations in any school, the principal thereof shall be given the names of all children found to have physical defects of consequence. The principal shall in turn notify the child's teacher and his playground or gymnasium instructor of the child's condition. Thereupon the teacher, in so far as is possible, shall adjust the child's work and conditions of study to his physical condition, and the playground or gymnasium instructor shall see that the child is given proper corrective physical training and does not engage at school in sports or exercises dangerous or harmful to him; provided that such physical training and supervision of play shall not be accorded any child whose parents or guardians object thereto.

" '(10) The director of school health work and his assistants, in conjunction with the supervisor of physical education and playground activities, shall carry on suitable instructional work in the schools in regard to problems of health and hygiene, and shall in every proper way foster the teaching of correct health habits among teachers and children.'

"The evidence discloses that these rules were faithfully observed by those in charge of said department.

"The record also discloses that, prior to the establishment of said health department there had been set aside in various buildings a room to which children who had become ill or who had been injured in play could be carried awaiting the arrival of their parents, and that these rooms are used by the health department for a physical examination of the children.

"The evidence tends to show that the work

of the health department has added to the efficiency of the public free schools, and, further, that it is the purpose of the school authorities to continue the health department in the public free schools of the city of Dallas on the same basis and in the same manner such work has been done during the past year, unless restrained from doing .so."

The findings of the Court of Civil Appeals are abundantly supported by the record.

### Opinion.

As shown by the record and the pleadings, plaintiffs in error sued herein as taxpayers in the city of Dallas. Their case is not grounded upon any invasion of the liberty of the persons of the children who may be inspected or examined. They do not allege that they have any children attending the public free schools in the city of Dallas, and do not allege that any of their children have been subjected to inspection without their consent. They sue only in the right of taxpayers, and complain of the alleged illegal use of the school funds of said city. Furthermore, the findings of the Court of Civil Appeals, supported by the undisputed evidence, show that no child has been inspected against its parents' consent, and that the rules of said board of education under and by virtue of which such work has been done forbid such inspection.

For these reasons, all of the argument presented in the application for the writ of error, bearing on the right of said board of education to compel a child to submit to a physical inspection or examination where the parents object, deals with a question not involved either directly or indirectly in this suit.

Section 1, article 7, of the Constitution of this state reads as follows: "A general diffusion of knowledge, being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

Article 2827, R. C. S. of Texas 1925, § 2, reads as follows: "Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employés, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the State available school fund in any city or district is suffi-·

cient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein."

The Charter of the City of Dallas, among other things, provides: "The city public schools shall be under the management and control of a Board of Education, composed of a president and six members, who shall be elected on the first Tuesday of April, 1908, and at a regular election to be held bi-ennially thereafter on the first Tuesday of April, and shall hold their offices for two years, and until their successors are elected and qualified. Any vacancy occurring in' the Board of Education shall be filled by an election to be held by said board, and the person elected shall hold office for the unexpired term. The members of said board 'shall serve without compensation, shall have exclusive control of the public schools of the City of Dallas, and shall have full and ample authority, in accordance with the provisions hereof, to provide necessary school buildings and facilities, and to open and conduct a sufficient number of schools to meet the wants of the scholastic population of the City of Dallas, so far as they can do so by prudent and judicious application of the means made subject to their administration and management. Among the powers hereby conferred on said Board of Education, the following are for greater certainty enumerated: To contract for, lease and purchase lots, and to construct buildings, for school purposes, and to make all needed repairs and alterations in same; to furnish said school buildings with all appropriate furniture, fixtures and apparatus; to sell or dispose of school property when the same is necessary or advisable; to lay off the city into such school districts as, in the judgment of the said board shall be proper; to increase or diminish said districts, and to change the boundaries thereof at pleasure; to employ superintendents, teachers and such other persons as may be necessary, and to fix their compensation and prescribe their duties, and to establish all such regulations, and rules deemed necessary by the board to provide and maintain an efficient system of public schools in the City of Dallas. The Board of Commissioners when levying the annual tax for the fiscal year, shall levy an ad valorem tax of one-fourth of one per centum of the taxable value of the City of Dallas for that fiscal year, and said tax, when collected, shall be deposited with the City Treasurer by the Board of Commissioners to the credit of the school fund, which said sum, together with all sums received from the state, county and other school funds, shall be 'held by the City Treasurer subject to the order and disbursement of the Board of Education, and shall be paid out upon Warrants issued by order of said Board of Education, audited by the City Auditor and·signed by the president and secretary of the Board of Education."

Under the statute the money belonging' to the funds of a school district derived from local taxes, etc., may be used for purposes that funds derived from the state cannot be used for. The record in this case and the Court of Civil Appeals finds that the entire expense of the health work sought to be enjoined herein is derived from local sources.

■ Under the express provisions of the Constitution and laws of this state, and the charter of said city, its board of education is given the express authority, in fact it is' made its duty, to provide and conduct an efficient system of public free schools for said city. Of course, said board cannot legally exercise power not granted to them by the Constitution and laws of this state, or by the charter of said city; and, furthermore, said board has no discretion to exercise powers not delegated to them by law, but said board does have powers delegated to them by law, the exercise of which necessarily involves judgment and discretion. It therefore follows that the power and duty to provide an efficient system of public free schools cannot be properly exercised without the use of judgment and discretion. From what we have said above it must necessarily follow that the board of education of said city must derive all of its lawful powers from the Constitution and laws of this state, and the charter of said city.

■ Now, bearing in mind the foregoing, let us see if said board has violated the Constitution and laws of this state, or the charter of said city.

By the express provision of section 1 of article 7 of our state Constitution, above quoted, the Legislature is given the authority, and it is expressly made its duty, to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.

By the express terms of section 2 of article 2827, local school funds, that is, funds derived from district taxes, tuition fees, and funds derived from other local sources, may be used for the purposes enumerated for state and county funds and in addition thereto certain other enumerated purposes, *and for other purposes necessary in the conduct of the public schools to be determined by the board of trustees.*

By the express provision of the charter of the city of Dallas, the city schools of said city are placed under the control and management of the board of education of said city, and said board is given *"full and ample authority,* in accordance with the provision hereof, to provide necessary school buildings and facilities, and to open and conduct a sufficient number of schools to meet the wants of the scholastic population of the City of Dallas. * * *" Among other pow-

ers conferred on said board of education, certain powers are specifically enumerated, and then the charter provides "*to employ superintendents, teachers, and such·other persons as may be necessary, and to fix their compensation and prescribe their duties; and to establish all such regulations and rules deemed necessary by the Board to provide and maintain an efficient system of public schools in the City of Dallas.*"

■ We have carefully read and considered the pleading of the parties, and authorities cited, together with the statement of facts, and we have reached the conclusion that since the board of education of the city of Dallas is given the power and it is made its duty to provide said city with an efficient system of public free schools, etc., in so far as they can do so by the prudent and judicious application of the means at hand, and since said board is given the further power and authority to employ superintendents, teachers, and such other persons as may be necessary, and since said board is further expressly given the right and power to establish such reasonable rules and regulations as said board may deem necessary to provide and maintain an efficient system of public free schools for said city, that said board is acting within the powers granted to it in establishing and maintaining the system of medical inspection and health work sought to be enjoined herein. The express power given by the Constitution and laws of this state, and the charter of said city, to do the things specified therein, necessarily includes the right and power to·do the incidental things reasonably proper and necessary to accomplish the end.

From what we have said, it follows that said board of education is not only given the rights and powers specifically named in the statute and in said charter, but said board necessarily has implied power, under the law, to prescribe conditions and make such reasonable rules and regulations in said schools as will render the work of the teachers effective and economical, and· enable the teacher to meet and understand the needs of the pupil, to the end that the teaching process may be intelligently directed and suited to the needs of the school and the pupils.

Modern science has conclusively established the fact, and the record in this case conclusively shows, that there is an intimate relation between the mind and the body, and no teacher can intelligently deal with the child's mind who ignores such child's physical condition. It therefore follows, as a matter of course, that money wisely and judiciously expended by the school board within proper limitation to ascertain the child's physical condition is a wise and legitimate expense of the teaching process. It would not only be an injustice to the child to conduct the teaching process without information as to its physical condition, but such a system would be a waste of public funds.

We are of the opinion that the board of education has the right and power, under the Constitution and laws of this state, and the charter of said city, to exercise sound judgment and discretion to perform and carry out the duties and powers delegated to them by law, and that in exercising such powers, they have not violated any law of this state, or any provision of the charter of said city, in instituting and maintaining the system of medical inspection and health work shown by the record in this case.

■ Since the board of education of the city of Dallas has the power and authority, under the Constitution and laws of this state, and the charter of said city, to exercise sound judgment and discretion in performing and carrying out the powers and duties required of them by law, the courts will not interfere with them in the exercise of such powers, unless there is a clear abuse of their discretion, or a violation of law, for to do so where there is no abuse of discretion or violation of law would be to substitute the discretion of the courts for that of the board. R. C. L. vol. 24, p. 575; City of New·Braunfels v. Waldschmidt, 109 Tex. 302, 207 S. W. 303.

We pretermit any discussion on the· question of jurisdiction, as this is an appeal from an order of the district court granting a temporary writ of injunction, and not a final hearing. The Court of Civil Appeals has made correct disposition of the case.

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.