## BOZEMAN et al. v. MORROW et al.

### No. 2523.

Court of Civil Appeals of Texas. El Paso.

Jan. 8, 1931

Vowell & Vowell, of El Paso, for appellants.

Breedlove Smith, of El Paso, for appellees.

WALTHALL, J.

L. E. L. Bozeman and others, plaintiffs, doing a mercantile business in the city of El Paso, brought this suit against defendants J. Walker Morrow and others, constituting the board of trustees of the public schools of the city of El Paso, the superintendent of the city of El Paso public schools, and the principal of one of the public schools of the city of El Paso, known and designated as Austin school. Plaintiffs allege that they are residents and taxpayers in the city of El Paso; that they own and for a long time have conducted a mercantile establishment adjoining Austin School; that they offer for sale, to the pupils attending said school, school supplies, such as pens, pencils, ink, tablets. etc., articles of food and confections. and that they have built up a business at said place that would net them a profit had it not been for the acts of defendants of which they complain; they allege that they have at all times maintained good order, etc.; that their school supplies and wares sold and offered for sale to the pupils were of the reasonable value for which they were sold and offered for sale; that they incurred great expense in maintaining and operating said business in paying rent, taxes, etc.; that the acts of defendants complained of are unjust unfair competitions to their business, and, if continued, will result in great loss to plaintiffs and to their bankruptcy.

Plaintiffs allege that defendants unlawfully, willfully, and without just cause, and

with the intention of destroying plaintiffs' said business, began conducting in the Austin school building a mercantile establishment for the purpose of selling and dispensing among the pupils of said school similar articles which plaintiffs were selling and attempting to sell in violation of the Texas statutes, with the result that plaintiffs are unable to sell to pupils said school supplies.

The petition charges a conspiracy on the part of defendants to establish and that they established a confectionary store in said school building and made large sales of confections to said pupils, and that a large part of such sales these plaintiffs could have made had defendants not established such business in competition to plaintiffs; that defendants are not compelled to pay taxes, rents, or other usual expenses as plaintiffs are required to pay; that said building should be used for school purposes and not for a mercantile business for profit; that said mercantile business is conducted under the control of the principal of the Austin school, and put into effect by the superintendent and trustees that the pupils are prohibited, under penalty, from patronizing plaintiffs; and that by reason thereof plaintiffs have sustained the damages complained of. Plaintiffs pray for damages and that defendants be enjoined from maintaining a mercantile establishment in the Austin school building, and enjoined from ordering, directing, encouraging, or suggesting to pupils not to trade or buy with plaintiffs.

Defendants answer by general denial; they specially deny any conspiracy; deny that they have prohibited any pupil from dealing with plaintiffs; they specially allege that in 1922 the board of trustees of the independent school district of the city of El Paso authorized and permitted the principal of the Austin school, together with the Austin Parent Teachers' Association, to establish and maintain a cafeteria in said school; that said association is a voluntary association of the parents and pupils attending said Austin school, and the principal and teachers of said school, and that the principal of said school is an ex officio member thereof; that the purpose of said Austin Parent Teachers' Association and said school authorities in the operation of the cafeteria was and is to furnish wholesome food and balanced meals to the pupils attending that school at reasonable prices without profit to any person or organization; that said association established the cafeteria and has ever since been maintained and operated in which meals and desserts are furnished, stating same; that it is necessary for the health, safety, morals, and proper discipline of the pupils that they be required to stay upon the school grounds from their entrance until their final discharge, and to effect same the board of trustees and school officials have passed a rule that a pupil, except by written permission of the parents, may not leave the school grounds for any purpose during school hours or noon recess; that under the management of the school principal, and in connection with the management of the cafeteria, a small stock of pencils, writing papers, composition books, pens, pen points, and erasers are sold to pupils at customary prices, and only in emergencies when such things become exhausted during school hours, and the proceeds placed in the cafeteria funds, and without profit, and without intended competition with any one.

The case was tried to the court. The court found the facts as follows:

"Plaintiffs are merchants engaged in business in proximity to the Austin Junior High School in the City of El Paso; handling candies. school supplies, ice-cream, cakes, and various confections and soft drinks. The defendants are the Board of Trustees of the Independent School District of the City of El Paso, the principal, and Superintendent of Public Schools.

"In the year 1922 there commenced to be operated in connection with said High School a cafeteria, and same has been operated ever since. This cafeteria sells lunches to the pupils attending said Austin High School, and in connection therewith desserts at or about the time of the luncheon, and selected candies.

"In connection therewith there is also sold such school supplies as tablets, pencils, pens and so forth. The purpose of the sale of these school supplies is to meet emergencies, and not for the ordinary use of the pupils of the school. The proceeds of the sale of school supplies go to the cafeteria fund. The original equipment for the cafeteria was purchased out of school funds. It has supported itself since. A lady is employed to superintend the cafeteria, and her salary is paid from the fund arising from the operation of the cafeteria, as are the supplies and labor. The net profit arising from the operation of the cafeteria, the sale of school supplies and candies, is negligible. The cafeteria is conducted in two rooms of the school building. The food and desserts supplied are sold at moderate prices, and are good and wholesome for growing children.

"With the consent and acquiescence of the School Board the teachers of Austin High School have promulgated and enforced a rule substantially as follows: The pupils are forbidden from leaving the school grounds at noon hour unless they have the written consent of their parents. The object and purpose of this rule is the safe-guarding of the health and morals of the pupils of the school. The rule in question reasonably subserves the purposes for which it was promulgated, and is enforced. It would be very difficult, if not

impossible, to enforce this rule if, in some way, wholesome food at reasonable prices, were not supplied on the school grounds.

"The pupils at the Austin High School come from various portions of the eastern part of the City of El Paso, and some of them live relatively far remote from the school.

"The annual enrollment of pupils is about twelve hundred. The average attendance is somewhat below the enrollment. Some five or six hundred pupils regularly patronize the cafeteria.

"In some cases the school authorities have sought to have parents rescind permission for children to leave the school grounds during recess, the purpose in so doing was to promote the discipline of the school and the welfare of the children.

"In some cases the school authorities have inflicted reasonable punishment on pupils for violation of the rule relating to pupils remaining on the school grounds. The purpose of this rule, and the purpose of the enforcement thereof is that, as before stated, the moral and physical welfare of the pupils. Its enforcement incidentally results in an increased patronage by the pupils of the cafeteria. The teachers are, and at all times have been, solicitous, that the 'cafeteria be successfully maintained.

"The business conducted by the plaintiff, Bozeman and his wife, is to an extent injuriously affected by the operation of the cafeteria, and the enforcement of the aforesaid rule, in that pupils that would otherwise patronize plaintiffs are thereby prevented from so doing.

"The maintenance of cafeterias along the same general lines as the one in question herein throughout the schools in the cities of the United States is general. In perhaps a majority of the Cities of Texas, cafeterias are maintained either by the school authorities, or with their consent and acquiescence.

"The rule in question (as to pupils remaining on the school grounds during recess) is a reasonable and necessary one for the protection of the health and morals of the pupils and the efficient carrying out of the purposes of the school. The maintenance of the cafeteria is reasonably necessary to secure a compliance by the pupils to the rule.

"Under the rule there is nothing to prevent pupils from bringing their food to the school grounds, and this practice is in no way discouraged by the school authorities.

"Neither the principal, the teachers nor the school board in any way profit from the operation of the cafeteria. The lady superintending the preparation of and serving of the food does receive out of the funds arising from the operation of the cafeteria a reasonable salary for her services.

"There is no money used in the operation of the cafeteria which is derived from taxation unless the purchase of the original equipment in 1922 was from this source, and a portion of the school building is used."

The court entered judgment that appellants take nothing by their suit, and denied the relief prayed for, to which appellants excepted and prosecute this appeal.

### Opinion.

Appellants, in neither of their three propositions, challenge the sufficiency of the evidence to sustain any of the trial court's findings of fact as above stated.

Under the mandate of the state Constitution making it the duty of the Legislature to establish and make suitable provision for the support and maintenance of an efficient system of public free schools, the Legislature, among other things, provided for independent school districts, the election of a board of trustees for such districts with power to adopt such rules and regulations as said board may deem proper, and the further provision that the public free schools of such district shall be under the control of such board with the exclusive power to manage and govern said school, and all rights and title to property belonging to such district are vested in said board of trustees.

Article 2827, second paragraph, R. C. S., under the subject of authorized expenditures, after enumerating the uses to which school funds, not involved here, may be applied, adds: "And for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees."

Appellants sue appellees as constituting the board of trustees of the independent school district of the city of El Paso, the superintendent of said district schools and principal of the Austin School, and the court found that appellees occupied such positions.

We have found no inhibition in the statutes as to the establishment of cafeterias in connection with the public schools, or in the public school buildings. The court found the cafeteria in the Austin school was commenced to be operated in 1922, and has been operated ever since; that the cafeteria sells luncheons to the pupils attending that school; that the maintenance of cafeterias along the same general lines as the one in question, with the consent of the school authorities, is general in the schools throughout the United States. The establishment and maintenance of cafeterias in the schools have been before the courts, in recent years, both state and federal.

It is apparent from the record that the establishment and maintenance of the cafeteria by the school board does not subserve a private mercantile purpose in any commercial competition with private restaurants,

but is conducted for the student body of the Austin school, and for reasons which concern their welfare as students of that school. The cafeteria is a necessary convenience, and is not obnoxious to any Constitution or statutory inhibitions, and, we think, a reasonable exercise of the discretionary, power conferred by law upon the board of trustees. Goodman v. School District No. 1, City and County of Denver et al. (C. C. A.) 32 F. (2d) 586, 63 A. L. R. 92.

As to the discipline of the pupils of the school, in having them patronize the cafeteria, of which much is said, it is a sufficient answer that appellants' suit is not grounded upon any invasion of the liberty of the person of any pupil who may attend the school. They do not allege that any of appellants has a child attending that school. They sue only in the right of taxpayers, and, as to this part of the suit, complain of alleged illegal use of the school building. On this branch of the case we have concluded that, since the board of trustees of the city of El Paso is given the power and it is made its duty in the exercise of the power given to adopt such rules and regulations as the board of trustees may deem proper in the school district under their control, and has the exclusive power to manage and govern said school, and all rights and titles to property for school purposes are vested in the board, and the board is given the power to employ a superintendent, principal, and such others as the board may deem necessary, said board is acting within the powers granted to it in establishing and maintaining the cafeteria shown by the evidence and found by the court, and to adopt and enforce such rules for the discipline and control of the school as the board may deem proper, and the courts may not interfere unless a clear abuse of power and discretion vested in the board is made to appear. City of Dallas et al. v. Moseely (Tex. Civ. App.) 286 S. W. 497; Moseley v. City of Dallas (Tex. Com. App.) 17 S. W.(2d) 36; Goodman v. School District, supra, and cases there referred to; City of New Braunfels v. Waldschmidt, 109 Tex. 302, 207 S. W. 303.

Appellants submit that any teacher or employee of the schools violates the latter portion of article 2876b who in any way sells or distributes or handles crayon, erasers, pens, ink, pencils, tablets, etc., and that the evidence shows the article of the statute is being violated at the Austin school.

The evidence shows and the court found that in connection with the cafeteria there is also sold such school supplies as tablets, pencils, pens, etc.; that the purpose of the sale of these school supplies is to meet emergencies and not for the ordinary use of the pupils of the school; that the proceeds of such sales go to the cafeteria fund.

The principal of the school testified: "We also sell pencils and tablets down there under the stairway, note books and rubber erasers, some of our school supplies are bought from stationery stores here in town. * * * She (Mrs. Campbell, an employee) buys those tablets from different parties. * * * The supplies are carried more in the nature of an emergency to supply the pupils during the school hours. * * * We carry pencils, pens, pen holders, erasers and writing books and scratchpaper tablets."

Without quoting, it is shown from the evidence that a profit is made from sale of the school supplies, and that the profit made is used "toward the purchase of athletic equipment, library books, or for the music department, the money does not go into the school fund, or any private individual, it belongs to the student body fund."

From the evidence it appears that the school supplies referred to in the proposition are bought at local stores in the city; the money used does not come from the public school fund.

Article 2876b of the statute reads: "Rules by superintendent.—Specific rules as to the requisition, distribution, care, use, and disposal of books may be made by the State Superintendent of Public Instruction, subject to the approval of the State Board of Education; provided, that such rules shall not conflict with the provisions of this Act, or with the uniform textbook law under the terms of which contracts for supplies and books are made with the publishers or with the terms of said contract. No teacher or employee of the school engaged in the distribution of textbooks under this law as the agent or employee of the State, or of any county or district in the State shall, in connection with this distribution, sell or distribute, or in any way handle, any kind of school furniture or supplies, such as desks, stoves, blackboards, crayon, erasers, pens, ink, pencils, tablets, etc."

As we view it, the teacher or employee of the school, to be prohibited from selling, distributing, or handling the school supplies mentioned in the latter part of the article, must be engaged in the distribution of text-books, furnished by the state, under the laws as agent or employee of the state, county, or district, and the sale, distribution, or handling of such supplies, to be prohibited, must be in connection with the distribution of the uniform text-books. The evidence shows the items of erasers, pens, pencils, tablets, etc., are bought with cafeteria funds, and not the text-book fund, and sold through the management of the cafeteria and in connection with the cafeteria, and the evidence does not show that any one, in any way connected with the cafeteria, is in any way connected as agent, employee, or otherwise, with the distribution of the uniform text-books fur-

nished by the state, or that the sales of the school supplies are made in connection with the distribution of the uniform text-books.

The burden is on appellants to show that defendants, or some one of them, or some one employed by defendants, is making such sales in connection with the distribution of the text-books furnished by the state. The state is not interested in the sale of supplies bought with cafeteria funds and sold through the cafeteria.

The case is affirmed.