

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 16, 1967

Hon. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Dear Dr. Edgar:

Opinion No. M-127

Re: Whether a school district may budget, levy, collect and expend local maintenance taxes to purchase food and to pay salaries of personnel and other various overhead costs in the operation of school lunchrooms, and related questions.

You have requested the opinion of this office on the above subject. Your particular questions are quoted as follows:

"1. May a school district budget, levy, collect, and expend local maintenance taxes to purchase food, to pay salaries of managers, personnel, auditing costs and other lunchroom overhead involved in operation of school lunchrooms?

"2. May a school district by design charge all the students (buying lunch) less than the cost of preparing and serving a school lunch, and provide the difference out of local maintenance funds? Or out of State Available Fund?

"3. May a school district in the operation of its school lunchrooms discount the usual charge for lunch to favor indigent pupils in other school plants, where the district deems same desirable?

"4. May a school district lawfully serve free lunches to the children whose parents cannot or will not pay for them?

"5. If inquiries (3) and (4) are answered affirmatively, and where indigent and the other children receive free or discounted lunches, can prices to paying students be adjusted, raised to absorb such expenditure?

"6. In operation of a school lunch program, is a school district legally obligated to operate

it on a self-sustaining basis; or may it by
design operate such on a loss basis and make
up for the loss out of: Local tax funds, State
school funds; or by State and local tax funds
in such proportions the district determines?"

In replying to your first question we must look to Article
2827, Vernon's Civil Statutes. This statute provides the basis for
the expenditure of all public free school funds, and reads in per-
tinent part as follows:

"The public free school funds shall not be ex-
pended except for the following purposes:

"1. The State and county available funds shall
be used exclusively for the payment of teachers'
and superintendents' salaries, fees for taking the
scholastic census, and interest on money borrowed
on short time to pay salaries of teachers and super-
intendents, when these salaries become due before
the school funds for the current year become avail-
able; provided that no loans for the purpose of pay-
ment of teachers shall be paid out of funds other
than those for the then current year.

"2. Local school funds from district taxes,
tuition fees of pupils not entitled to free tuition
and other local sources may be used for the purposes
enumerated for State and county funds and for pur-
chasing appliances and supplies, for the payment of
insurance premiums, janitors and other employes, for
buying school sites, buying, building and repairing
and renting school houses, and for other purposes
necessary in the conduct of the public schools to
be determined by the Board of Trustees, the accounts
and vouchers for county districts to be approved by
the county superintendent; provided, that when the
State available school fund in any city or district
is sufficient to maintain the schools thereof in
any year for at least eight months, and leave a sur-
plus, such surplus may be expended for the purposes
mentioned herein." (Emphasis supplied)

In Bozeman v. Morrow, 34 S.W.2d 654 (Tex.Civ.App., 1931), the court
approved the operation of a school cafeteria in a public school in
El Paso. The original equipment for the cafeteria was purchased
from school funds, but the maintenance and operation of the cafe-
teria was on a self-sustaining basis. The court in its decision
did not dwell upon the aspect of the problem presented by the ori-
ginal equipment purchase, but held that the operation of the cafe-
teria on a self-sustaining basis was a valid exercise of the dis-
cretion vested in the Board of Trustees by Article 2827.

In Attorney General's Opinion C-601 (1966), this office dealt with a question wherein a school district had a surplus in its self-sustaining cafeteria program and wished to utilize such surplus in providing lunch assistance for needy pupils. In approving the proposed program we stated:

"The fact that a surplus realized from the operation of the cafeteria and that such surplus, which we assume is negligible, is used to defray the cost of meals of its needy children is not an abuse of the discretion vested in the school district board to operate and support an efficient system of education, so long as such practice is not carried beyond reasonable bounds."

In Mosely v. City of Dallas, 17 S.W.2d 36 (Tex.Comm.App., 1929), we find another essential link leading to our conclusion. The public school system of Dallas had instituted a program of free health checkups for its pupils, such examinations being conducted by a paid, full-time professional staff. This program was challenged on the primary ground that the Board of Education of the City of Dallas had no power to expend local tax funds for such purposes. The court dealt at length with the constitutional and statutory basis for the school board's authority in expending tax monies for educational purposes, and at page 41 said the following:

"We have carefully read and considered the pleading of the parties, and authorities cited, together with the statement of facts, and we have reached the conclusion that since the board of education of the city of Dallas is given the power and it is made its duty to provide said city with an efficient system of public free schools, etc., in so far as they can do so by the prudent and judicious application of the means at hand, and since said board is given the further power and authority to employ superientendents, teachers, and such other persons as may be necessary, and since said board is further expressly given the right and power to establish such reasonable rules and regulations as said board may deem necessary to provide and maintain an efficient system of public free schools for said city, that said board is acting within the powers granted to it in establishing and maintaining the system of medical inspection and health work sought to be enjoined herein. The express power given by the Constitution and laws of this state, and the charter of said city, to do the things specified therein, necessarily includes the right and power to do the incidental things reasonably proper and necessary to accomplish the end.

"From what we have said, it follows that said board of education is not only given the rights and powers specifically named in the statute and in said charter, but said board necessarily has implied power, under the law, to prescribe conditions and make such reasonable rules and regulations in said schools as will render the work of the teachers effective and economical, and enable the teacher to meet and understand the needs of the pupil, to the end that the teaching process may be intelligently directed and suited to the needs of the school and the pupils.

"Modern science has conclusively established the fact, and the record in this case conclusively shows, that there is an intimate relation between the mind and the body, and no teacher can intelligently deal with the child's mind who ignores such child's physical condition. It therefore follows, as a matter of course, that money wisely and judiciously expended by the school board within proper limitation to ascertain the child's physical condition is a wise and legitimate expense of the teaching process. If would not only be an injustice to the child to conduct the teaching process without information as to its physical condition, but such a system would be as waste of public funds."

In view of the foregoing discussion, in answer to your first question, you are advised that is is the opinion of this office that a school district may budget, levy, collect and expend local maintenance taxes to purchase food, to pay salaries of managers, personnel, auditing costs and other lunchroom overhead involved in the operation of school lunchrooms, when the Board of Trustees, in the exercise of its discretion, has made a determination that such expenditures are necessary to the proper conduct of the public schools.

The answer to your second question is the same as the answer to your first question. Having made the initial determination as to educational necessity, the rate of cost per unit that is charged to each pupil is a matter within the sound discretion of the Board of Trustees. Whether the lunchroom program is self-sustaining or is supported by local tax funds is a matter for the determination of the Board in managing the funds available to it. Of course, State Available Fund monies may not be used for lunchroom purposes except in the event of a surplus as spelled out in Article 2827, supra.

With regard to your third question, what has been said previously makes it clear that is is the duty of the Board of Trustees to make the decisions as to what is necessary for the proper conduct of the educational process in the public schools under its charge. The public schools' function is to educate all their pupils as well

as possible with the facilities available. Certainly, the needs
of particular pupils differ, and the Board is justified in taking
these educational needs into consideration in establishing the
various programs. Nevertheless, this office is unable either to
approve or disapprove the proposal contained in your third question,
for the reason that insufficient information is given. The answer
to the fourth question may serve your present purposes just as well.

As we have previously said, the Board of Trustees has the
discretionary power to set the cost per meal to each pupil. In
answer to your fourth question, it necessarily follows that the cost
can be set at any level from zero to one hundred per cent. It is
the duty of the Board to establish the necessary guidelines for
determination of need both in order that the schools avoid the futi-
lity of trying to teach a hungry child, and avoid the useless act of
donating food to a well-fed one.

In answer to your fifth question, you are advised that it
is the opinion of this office that the Board of Trustees has no au-
thority to charge any pupil more than the reasonable cost of the
food served to him in the school lunchroom in order to absorb def-
icits incurred by reason of meals served to other students at a re-
duced price.

Your sixth and last question has in large measure been
answered by the previous discussion. If the Board of Trustees finds
it necessary to provide school lunches to some pupils at less than
cost, it is within their power to do so. Since the Board may not
charge more than the reasonable value of a meal to any other pupil,
the school lunch program must obviously operate with some degree of
loss. Such deficit may be made up from local tax funds, as dis-
cussed in the answer to the second question, supra. State Avail-
able Funds may be used only if the conditions of Article 2827 as to
surplus are met. In either event it is not necessary to discuss any
possible proportioning plan by the Board of Trustees.

### S U M M A R Y

A school district may budget, levy, collect
and expend local maintenance taxes to purchase
food, to pay salaries of personnel, and to pay
other overhead costs involved in the operation
of school lunchrooms, when the Board of Trustees
involved has made a valid determination that such
expenditures are necessary to the proper conduct
of the public schools.

The cost per meal to be charged pupils is a
matter within the sound discretion of the Board
of Trustees, and the school lunch program may be
self-sustaining or supported by local tax funds.

Monies from the State Available Fund may be used in the lunch program only in the event of a surplus as described in Article 2827, V. C. S.

The Board of Trustees has the discretionary authority to set the charge per meal for any child at any level up to the full reasonable cost thereof. The Board of Trustees has no authority to charge any child an amount in excess of the reasonable cost of his meal in order to absorb deficits incurred by reason of meals served to other students at a reduced price.

A school district is not obligated to operate its school lunch program on a self-sustaining basis, and may make up any deficit from local tax funds.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Malcolm L. Quick
Assistant Attorney General

APPROVED:
OPINION COMMITTEE
Kerns B. Taylor, Chairman
W. O. Shultz, Co-Chairman
Sam Kelly
Jack Sparks
Dyer Moore, Jr.
John Grace

A. J. Carubbi, Jr.
Staff Legal Assistant